BROWARD COUNTY PORT AUTHORITY v. STATE.

175 So. 796.
Opinion Filed July 31, 1937.

74

*George W. English, Jr.,* and *R. R. Saunders,* for Appellant;

*Louis F. Maire,* for Appellee.

BUFORD, J.—Broward County Port District was created and established by Chapter 17506, Acts of 1935. The Act creating the District, or Charter Act, was amended by Chapter 18442, Act of 1937. The District as created and as it exists is among those Districts contemplated and within the purview of Sec. 6, Article IX, of the Constitution of Florida as now written.

Article III of Chapter 18442, *supra,* amended Sec. 9 of Chapter 17506, *supra,* to read in part as follows:

"Section 9. To borrow money, not to exceed in the aggregate the sum of $1,000,000.00, from any State or Federal agency or agencies, or private party or parties, for the purpose of carrying out any of the powers, projects or purposes of the Port Authority or Port District or for the purpose of providing funds to be used in the construction, maintenance, expansion, promotion or repair of harbor facilities and improvements at Port Everglades, or for the

purpose of deepening, widening, constructing or repairing of slips, channels, turning basins, bulkheads, seawalls, jetties, breakwaters, warehouses or wharves at Port Everglades, or for the purpose of constructing or repairing relieving platforms, railroad facilities, streets, roads or avenues, surrounding, serving or adjacent to Port Everglades; to evidence or secure such loan or loans by executing a promissory note or notes or by executing and issuing bonds or certificates of indebtedness therefor in the name of said Port Authority, which said notes, certificates of indebtedness, or bonds shall be binding obligations of the said Port Authority and said Port District; to further secure such promissory notes, certificates of indebtedness, or bonds, the Port Authority is authorized to mortgage the project or projects, facility or facilities for the construction, repair or improvement of which such note or notes, certificates of indebtedness or bonds may be executed, and in addition thereto to pledge any part of the revenues from the operation of Port Everglades and the facilities thereof for the payment of any such loan or any other loan or obligation lawfully incurred under this section; and to further provide for the payment of any bonds executed and delivered under authority of this section by providing for and pledging moneys to be raised by taxation: provided, however, that before any bond to be paid wholly or in part by taxation shall be issued it shall be first approved at an election pursuant to the Constitution and Laws of the State of Florida."

Under these provisions the governing authority sought by appropriate resolution and proceedings to issue and sell negotiable improvement revenue certificates.

The resolutions, among other things, provide:

"SECTION 2. For the purpose of financing the cost of

constructing said additions and improvements, there shall be issued negotiable improvement revenue certificates of the Port Authority (hereinafter called the 'Certificates') in the aggregate principal amount of $35,000.00, which Certificates shall be dated July 1, 1937, in the denomination of Three Thousand Five Hundred ($3,500.00) Dollars each, numbered from 1 to 10, both inclusive, in order of maturity, shall bear interest at the rate of six per cent. (6%) per annum, payable semi-annually, on January 1, and July 1, in each year, first interest being payable January 1, 1938, payable as to both principal and interest at the banking quarters of The Barnett National Bank of Fort Lauderdale, Fort Lauderdale, Florida, in such coin and currency as is, on the respective dates of payment of the same, legal tender for the payment of public and private debts, and shall mature serially on January 1, and July 1, in the years and amounts as follows, to-wit:

| "Year | Amount |
|---|---|
| January 1, 1938 | $3,500.00 |
| July 1, 1938 | 3,500.00 |
| January 1, 1939 | 3,500.00 |
| July 1, 1939 | 3,500.00 |
| January 1, 1940 | 3,500.00 |
| July 1, 1940 | 3,500.00 |
| January 1, 1941 | 3,500.00 |
| July 1, 1941 | 3,500.00 |
| January 1, 1942 | 3,500.00 |
| July 1, 1942 | 3,500.00 |

"Said Certificates shall be signed by the Chairman of Broward County Port Authority, and attested by the Executive Secretary of said Port Authority, and sealed with the corporate seal of said Port Authority."

Then follows the form of the proposed Certificates.

Then the resolutions provide:

"SECTION 4. The Chairman is hereby authorized to execute the said Certificates in the name of Broward County Port Authority, and the Executive Secretary is hereby authorized and directed to attest the same and affix the seal of the Port Authority to the Certificates. The Executive Secretary is hereby authorized and directed to deliver said Certificates to the Barnett National Bank of Fort Lauderdale, Fort Lauderdale, Florida, upon receipt of payment therefor, at par, plus accrued interest.

"SECTION 5. The said utilities and facilities of the Port Authority shall be operated on the fiscal year basis, commencing on November 1 of each year and ending on the 31st day of October, following.

"From and after the effective date of this Resolution, all of the revenue derived from the operation of the utilities and facilities of the Port Authority shall be deposited as received into an account designated 'Improvement Revenue Account' (hereinafter called the 'Revenue Account') and the moneys in said Revenue Account shall be set aside into separate and special funds, as follows:

"(a) Operation, Maintenance and Repair Fund: There is hereby created and established a fund designated 'Operation, Maintenance and Repair Account' (hereinafter called the 'Operation Account') into which there shall be paid out of the Revenue Account a sufficient amount, during each month, to provide for the reasonable current expenses of operation, maintenance and repairs of the utilities and facilities operated by the Port Authority.

"(b) Improvement Revenue Certificates Sinking Fund: There is hereby created and established an 'Improvement Revenue Certificates Sinking Fund' (hereinafter called the

'Trust Fund') into which shall be paid, in approximately equal monthly installments, during each fiscal year, after making the above required payments into the Operation Account, an amount equal to 100% of the amount required to pay:

"(1) The next maturing installment of principal of any of said Certificates.

"(2) The interest payments to fall due on all outstanding certificates up to and including the date of the next maturing installment of principal of any of said Certificates, and

"(3) An amount at least equal to 20% of the sum of the amount required by (1) and the amount required by (2), in order to provide a reserve in such Trust Fund. The payments required by (3) shall be continued until there is in said Trust Fund an amount sufficient to meet the next maturing installment of principal of any of said Certificates, and the principal and interest payments to fall due during the next two fiscal years thereafter. No payment need be made into the Trust Fund if, and when, the amount in such Trust Fund is at least equal to the aggregate principal amount of certificates then outstanding, plus the amount of interest then due, or thereafter to become due, on said Certificates. If, in any month, for any reason, there shall not be paid into said Trust Fund the amounts required by this Section, then an amount, equal to such deficiency, in the amount required to be paid into said Trust Fund in such month, shall be added to the amount otherwise required to be paid into said Trust Fund during the next succeeding month. The moneys in said Trust Fund shall be used solely for the purpose of paying the principal of, and the interest on, the Certificates and for no other purpose. All moneys in said Trust Fund shall be deposited in a bank, or banks, which are members of the Federal Reserve Sys-

tem, and shall be continuously secured by direct obligations of the United States of America, which obligations shall be, at all times, at least equal in market value to the amount of moneys in said Trust Fund.

"Section 6.   The Port Authority hereby covenants and agrees that, in determining the net revenues derived from the operation of the utilities and facilities, the salaries of the members of the Broward County Port Authority, the Executive Secretary, the Port Authority Attorney, and salaries of other administrative officers, shall not be in excess of such amounts as are now being paid.

"Section 7.   The Port Authority hereby covenants and agrees with the holders of such Certificates that, while any of the Certificates issued hereunder are outstanding and unpaid:

"(a) The Port Authority will maintain its utilities and facilities in good condition, and operate the same in an efficient manner, and at a reasonable cost.

"(b) The Port Authority shall fix and maintain rates and collect charges for such facilities and services, which will provide revenue sufficient, at all times, to pay the cost of operation, maintenance and repairs thereof, and to maintain the Trust Fund, as hereinbefore provided in Section (5) hereof.

"(c) The Port Authority will not issue any additional obligations, payable from the revenues of said utilities and facilities, except revenues which may be derived from that part of the port property known as Slip No. 2, unless the lien of such obligations on the revenues thereof is made junior and subordinate in all respects to the lien of the Certificates issued hereunder, and that it will not sell, mortgage, lease or otherwise dispose of, or encumber, any property essential to the proper operation of the Port Authority and

the facilities afforded by it, except such property which has been acquired for sale purposes for the development of the port.

"(d) The Port Authority will keep proper records and accounts, separate from all other records and accounts, in which complete and correct entries shall be made in accordance with standard principles of accounting, of all transactions relating to the operation of its utilities and facilities. The Port Authority shall furnish to any holder of any of the Certificates, at the time the same may be outstanding, at the request of such holder, not more than thirty (30) days after the close of each six months fiscal period, complete operating and income statements of the operation of its utilities and facilities in reasonable detail, covering such six months period, and not more than sixty (60) days after the close of the fiscal year, complete financial statements thereof in reasonable detail, covering such fiscal year, and certified by independent auditors, if so requested.

"(e) Any holder of any certificate issued hereunder shall have the right, at all reasonable times, to inspect the utilities and facilities, and all records and accounts thereof.

"None of the foregoing covenants shall be construed as requiring the Port Authority to expend any funds other than the revenues derived from the operation of its utilities and facilities.

"SECTION 8. The Port Authority, in the issuing of the Improvement Certificates, as provided in this Resolution, hereby reserves the right to pay any or all of said Certificates, prior to the maturity thereof, without paying interest beyond the date of payment.

"SECTION 9. No taxes shall ever be levied, and no moneys shall ever be taken or diverted from any funds derived from taxation, of the Port Authority, for the payment of

the principal of, or interest on, the Certificates issued hereunder.

"SECTION 10. All resolutions and parts of resolutions in conflict with the provisions of this resolution are hereby repealed.

"SECTION 11. This resolution shall be in full force and effect from and after its adoption."

Later an adjourned meeting was held by the Commissioners and a further Resolution was adopted which, among other things, provided:

"RESOLUTION.

"A RESOLUTION PROVIDING FOR THE EXECUTION AND DELIVERY TO THE BARNETT NATIONAL BANK OF FORT LAUDERDALE, A MORTGAGE UPON CERTAIN LANDS OWNED BY BROWARD COUNTY PORT AUTHORITY, TO SECURE THIRTY-FIVE THOUSAND DOLLARS IMPROVEMENT REVENUE CERTIFICATES ISSUED BY BROWARD COUNTY PORT AUTHORITY, PAYABLE TO SAID BANK.

"BE IT RESOLVED BY BROWARD COUNTY PORT AUTHORITY, the governing body of BROWARD COUNTY PORT DISTRICT:

"SECTION 1. That there shall be issued and delivered by Broward County Port Authority to The Barnett National Bank of Fort Lauderdale a first mortgage lien upon the following described property situate, lying and being in Broward County, Florida, to-wit:

"Beginning at a point 1540.0 feet East from the Southwest corner of the Southwest Quarter (SW¼) of Section Fourteen (14), Township Fifty (50) South, Range Forty-two (42) East, and running thence North at right angles to the South boundary of said Section Fourteen (14) a distance of 183.0 feet to the point of beginning of the tract herein described; from said point of beginning run East,

parallel with the Section line, 947.0 feet; thence North·at right angles to the last mentioned course, 87.5 feet; thence West, parallel with the Section Line, 947.0 feet; thence South 87.5 feet to point of beginning; the said described tract including within its boundaries all of the existing warehouse building together with extensions and additions thereto under construction at the date of this instrument, and being a portion of the lands conveyed by the City of Fort Lauderdale, Florida, to Broward County Port Authority by Special Warranty Deed on April 17, 1928, on file and of record at page 79 of Deed Book 182, of the public records of Broward County, Florida; containing 1.9 acres more or less and lying· and being situate in Broward County, Florida.

"Exhibit C, Page 1, for the purpose of further securing Thirty-five Thousand ($35,000.00) Dollars of Improvement Revenue Certificates issued by Broward County Port Authority to said Bank, as provided for in Resolution duly adopted by said Broward County Port Authority on the ............day of..........................., 1937.

"Section 2. That the Chairman of Broward County Port Authority is hereby authorized to execute said mortgage in the name of Broward County Port Authority, and the Executive Secretary is hereby authorized and directed to attest the same and to affix the seal of said Broward County Port Authority to said mortgage.

"Section 3. That said mortgage shall be in substantially the following form, to-wit:"

Then follows the form of the mortgage proposed to be executed.

Petition was filed seeking a decree and judgment validating and confirming the certificates proposed to be issued.

Notice was issued and published as in such cases by law made and provided.

The State's Attorney answered and, by leave of court, filed amended answer in which he alleged that the certificates are void "in that the issuance thereof is in direct violation of Section 6 of Article IX of the Constitution of the State of Florida, for the reason that no election has been authorized or held to permit the qualified freeholders of Broward County Port District to approve or disapprove the issuance of the said Improvement Revenue Certificates; that it is shown in and by the said Petition, and Resolution adopted by the Petitioner authorizing the issuance of the said Improvement Revenue Certificates, which is attached to the said Petition, and marked Exhibit 'A,' that the funds derived from the Improvement Revenue Certificates sought to be issued are to be used for the purpose of extending and constructing an addition to the warehouse facilities now operated by the Petitioner; and that the net operating revenues from the said warehouse facilities, and also from other and additional utilities owned and operated by the Petitioner are to be pledged for the payment of the said Improvement Revenue Certificates sought to be validated herein; that the Petitioner operates in addition to the warehouse facilities, other utilities, to-wit: Slips and docks, railroad and switching facilities, and other separate and distinct facilities usually operated and conducted in connection with the operation of harbors and ports, and the net operating revenues from all thereof are sought by Petitioner to be pledged to the payment of the said Improvement Revenue Certificates; and that, by reason thereof, the said Improvement Revenue Certificates are void and in direct violation of the said Section 6 of Article IX, of the Constitution of the State of Florida.

4. Respondent further shows that the Mortgage authorized to be issued, as set forth in the Petition filed herein, and as provided for in a Resolution authorizing the same, which Resolution is attached to the said Petition and marked Exhibit "C" to further secure the payment of the said Improvement Revenue Certificates, and that the real estate sought to be mortgaged is only the lands upon which the present warehouse is now situated and the lands upon which the addition or extension to the said warehouse will be constructed, located and situated; that the issuance of the said Mortgage, without a vote of the freeholders, as required by the said Section 6 of Article IX of the Constitution of the State of Florida, is void, and that it will be possible for the warehouse facilities and improvements to be lost to the benefit of the public by foreclosure proceedings, by reason of non-payment of the said Improvement Revenue Certificates, and that Petitioner will be forced to levy a tax upon the taxable property located within the said Port District, for the purpose of preventing a loss of such necessary facilities; that the issuance of the said Mortgage is in direct conflict and violation of the said Section 6, of Article IX, of the Constitution of the State of Florida, and, therefore, void."

The matter was brought on for hearing before the court on petition and answer, and the court entered its decree saying:

"The Petition seeks to have validated improvement revenue certificates to be issued by the petitioner, and to have validated a mortgage to be executed by petitioner on certain lands owned by the Port Authority to secure the payment of the aforesaid improvement revenue certificates. The resolution providing for the issuance of the said certificates recites that the funds derived from the certificates are to be

used to construct additional warehouse facilities, and pledges solely and only the revenue derived from the operation of all the facilities of the governing body for the payment of the indebtedness incurred. The resolution authorizing the execution of the mortgage was adopted subsequent to the adoption of the above resolution and gave a lien on the property therein described for the purpose of securing the aforesaid indebtedness.

"The State Attorney by his amended answer objected to the validation of the foregoing instruments on the ground that each of them comes within the inhibitions of Section 6 of Article IX of the Constitution of the State of Florida. It is my opinion that the objection to the validation of the mortgage is well taken. The debt evidenced by the mortgage is one for which the executing authority may be coerced into the levying of a tax for the purpose of paying such obligation so as to prevent the loss of its mortgaged property. The District has no authority to incur such indebtedness under the cited provisions of the Constitution without first submitting the question to a vote of the people. Boykin v. Town of River Junction, 164 Sou. 558; Kathleen Citrus Land Co. v. City of Lakeland, 169 So. 356; Evans v. Holman, 91 N. E. 723; Lobdill v. City of Chicago, 81 N. E. 354; City of Joliet v. Alexander, 62 N. E. 861; Leonard v. City of Metropolis, 115 N. E. 813.

"The objections to the validation of the improvement revenue certificates are not well founded. Our Supreme Court has uniformly held that a public body may issue such certificates for the purpose of making additions to then existing public utilities, and pledge the revenue derived solely and only from the operation thereof to the payment of the debt incurred without submitting the question to the voters for ratification. State v. City of Miami, 152 So. 6; State

v. City of Lake City, 156 So. 924; State v. City of Daytona Beach, 158 So. 300; Kathleen Citrus Land Co. v. City of Lakeland, *supra*. The case here presented as to the certificate comes squarely within the rule enunciated in these cases. Since this is a proceeding in Chancery where the Court may grant part of the relief sought and deny the remainder, no good reason has been made to appear why a decree should not be entered validating the improvement revenue certificates and denying the validation of the mortgage.

"IT IS, THEREUPON, ORDERED, ADJUDGED AND DECREED as follows:

"1. That a copy of the petition herein and a copy of the order to show cause, heretofore issued by this Court, have been duly served upon the State Attorney in the Fifteenth Judicial Circuit of Florida, in and for Broward County; that a notice addressed to the taxpayers and citizens of the Broward County Port District, requiring them to show cause, if any they have, why the improvement revenue certificates and mortgage described in the petition should not be validated and confirmed, has been duly published according to law; and that this Court has jurisdiction of this cause and of the parties hereto.

"2. That under and by virtue of Chapter 17506, Laws of Florida, Special Acts of 1935, and other Acts amendatory and supplementary thereto, and the Constitution and general laws of the State of Florida, Broward County Port Authority, a body corporate, the governing authority of Broward County Port District, a taxing district located within Broward County, State of Florida, petitioner herein was and is authorized and empowered to construct, own, operate and maintain various utilities and facilities at Port Everglades in Broward County, Florida, constituting a deep water harbor, warehouse used for storing cargoes,

docks and wharves, railroads and other facilities in connection therewith, and to fix and maintain rates and to collect charges for such services and facilities, and to issue revenue certificates to obtain funds to finance the construction of such harbor facilities; and the said petitioner did construct all of said facilities and utilities, and such construction was financed by the issuance of general obligation bonds, for the payment of which said Broward County Port Authority was required, by law, to levy and collect an *ad valorem* tax upon all taxable property located within the territorial confines of Broward County Port District.

"3.  That said petitioner now owns, operates and controls Port Everglades Harbor and the facilities and utilities in connection therewith; that said petitioner has been, and is, deriving annual net revenues from said harbor utilities and facilities, and that the revenues so derived, at the time of the adoption of the resolution authorizing issuance of the improvement revenue certificates sought to be validated in this proceeding, had not been pledged, in whole or in part, to the payment of any other bonds or obligations of petitioner; that petitioner has the power and authority to construct, own, operate and maintain additions and improvements to the facilities now in operation, and more particularly to the existing warehouse facilities, and to fix and maintain rates and collect charges for the services and facilities furnished by the petitioner, as may be extended and improved; that said Broward County Port Authority has the further power and authority for the purpose of financing such extensions, additions and improvements, to issue negotiable revenue certificates, payable solely out of the net revenues of said harbor facilities, after the payment of cost of operation, maintenance and repairs of said facilities, and that said Broward County Port Authority has the power and authority to issue such revenue certificates without ap-

proval by a vote of the freeholders of said Broward County Port District, as is required by Section 6, Article IX, of the Constitution of Florida, as amended, prior to the issuance of said revenue certificates.

"4. That the petitioner is a public district, created for the purpose of constructing, maintaining and operating a port or harbor, and that all its business and functions are for that purpose. That the deep water harbor, warehouse, docks, wharves, railroads and other facilities in connection therewith, operated by petitioner, are all operated together as one utility. for the rendition of the services offered by petitioner at Port Everglades, Broward County, Florida.

"5. That the improvement revenue certificates described in the petition herein, in the aggregate principal amount of $35,000.00 to be dated July 1, 1937, in the denomination of $3,500.00 each, numbered from 1 to 10, both inclusive, in order of maturity, bearing interest at the rate of six per-centum (6%) per annum, payable semi-annually on January 1 and July 1 of each year, payable to the order of The Barnett National Bank of Fort Lauderdale, Fort Lauderdale, Florida, payable as to both principal and interest at the banking quarters of said Bank, as follows:

| "Year | Amount |
|---|---|
| January 1, 1938 | $3,500.00 |
| July 1, 1938 | 3,500.00 |
| January 1, 1939 | 3,500.00 |
| July 1, 1939 | 3,500.00 |
| January 1, 1940 | 3,500.00 |
| July 1, 1940 | 3,500.00 |
| January 1, 1941 | 3,500.00 |
| July 1, 1941 | 3,500.00 |
| January 1, 1942 | 3,500.00 |
| July 1, 1942 | 3,500.00 |

all as described in the resolution providing for the same, a copy of which resolution is attached to, and made a part of, said petition and marked 'Exhibit A' be, and the same are hereby, validated and confirmed.

"6. That the mortgage, sought to be issued by petitioner and validated in this proceeding, would be in violation of Section 6, Article IX, of the Constitution of·Florida, and the prayer of the petition, to validate and confirm said mortgage is hereby denied, and the petition, in so far as it seeks to validate and confirm said mortgage, be, and the same is hereby dismissed.

"DONE AND ORDERED at Fort Lauderdale, Broward County, Florida, this the 14th day of July, A. D. 1937."

From this decree appeal was taken.

On authority of the opinions and judgments of the cases cited by the Circuit Judge in the said final decree, as well as on authority of the opinions ·and judgments in the cases of State v. Calhoun County, *et al.,* 125 Fla. 263, 169 Sou. 673, and State v. Calhoun County, 126 Fla. 376, 170 Sou. 883, and authorities cited in those opinions, the decree appealed from should be in all respects affirmed.

It is so ordered.

Affirmed.

TERRELL, BROWN and CHAPMAN, J. J., concur.