90 So.2d 47 (1956)
HOLLYWOOD, INC., a Florida corporation, Appellant,
v.
BROWARD COUNTY, a political subdivision of the State of Florida, et al., Appellees.
Supreme Court of Florida. Special Division A.
September 12, 1956.
Rehearing Denied November 8, 1956.
Stanley M. Beckerman, Ellis & Spencer, Hollywood, and Sibley & Davis, Miami Beach, for appellant.
John U. Lloyd and John B. Gregory, Jr., Fort Lauderdale, for Broward County and J.H. Burke, H.J. Driggers, R.T. Gallion, Tony Salvino and H. Vivian Saxon, as members of and constituting the Board of County Commissioners of Broward County, Florida and Broward Public Recreation Assn.
Smathers, Thompson, Maxwell & Dyer, Miami, for Florida Land Holding Corp. and J & J Realty Co. Dale, Scott & Singer, and C. Shelby Dale, Fort Lauderdale, for Fort Lauderdale Board of Realtors, Inc., and Fort Lauderdale Beach Improvement Assn.
CARROLL, Associate Justice.
Appellant filed a taxpayer's class suit for declaratory decree, seeking to invalidate and undo a $1,600,000 land acquisition by Broward County, charging that the payment plan ignored requirements of Section 6 of Article IX of the Constitution, F.S.A.
On the granting of defendants' motions to dismiss in the lower court plaintiff declined to amend, and a dismissal followed.
This appeal is from the order of dismissal, and from an earlier order sustaining objections to the taking of certain depositions by plaintiff.
On the latter point, the order preventing the depositions was within the discretion of the Court under 30 F.S.A., Rule 1.24(b) of the 1954 Florida Rules of Civil Procedure. The depositions were noticed while motions to dismiss were pending. The granting of those motions and dismissal of the cause, within a few days after *48 the ruling on the depositions, rendered that question unsubstantial if not moot.
To support its contention that the complaint was sufficient, appellant argues that the purchase of land by the County without an approving vote of freeholders, subject to a mortgage for a large amount, payable over a number of years, amounts to a coercive requirement for payment of the mortgage by the County equivalent to its personal undertaking, interdicted by the Constitution, Article IX, Section 6.
The complaint contained these allegations:
"2) That Chapter 25709 [Sp.] Laws of Florida, Acts of 1949, as amended by Chapter 28950 [Sp.] Laws of Florida, Acts of 1953, authorized Broward County, acting through its Board of County Commissioners, to acquire lands in Broward County by purchase, gift, or by the exercise of its power of eminent domain to be used for playgrounds, parks, beaches, recreational centers or other recreational purposes, and provided that for the purpose of paying the cost of acquiring any land for such purpose and constructing any roads and bridges which may be necessary to provide accessibility to sand lands and equiping it for recreational purposes, the Board of County Commissioners was authorized and empowered to issue negotiable bonds of Broward County not to exceed the aggregate amount of $2,500,000.00. However, it is provided that such bonds shall be issued only after the same have been approved by the majority of votes cast in an election in which a majority of freeholders who are qualified electors residing in Broward County shall participate.
* * * * * *
"4). Pursuant to the authority vested in said Board as aforesaid, and in the resolution adopted implementing the action of the Board authorizing said bonds, a special election was called to be held on Tuesday, May 4, 1954, for the purpose of submitting to the qualified electors of Broward County who are freeholders, the question of whether such bonds should be issued. On May 4, 1954, at the general primary election of Florida, the freeholders of Broward County voted upon this bond issue and the issuance of the $2,500,000.00 of bonds was disapproved. * * *.
* * * * * *
"6) The defendant commissioners and the said Kleins and Goodfriend, acting in consort, determined to effect the purchase and sale of said property to Broward County, although the county was without authority to create or assume an indebtedness for the purchase price of said property. The Constitution of the State of Florida prohibited the county commissioners from creating an indebtedness of the county for the purchase of said beach land unless the creation of the indebtedness for such purchase was approved by the freeholders of said county. This scheme, gimmick or device employed by the Kleins and Goodfriend and by the county commissioners, was executed in the following fashion: The Kleins created a corporation known as the J & J Realty Co., Inc., a Florida corporation. This was a corporation wholly owned, dominated and controlled by the Kleins and Goodfriend. It was a corporation without funds, without assets, and without any organization. It was in fact a name clothed with a corporate fiction and utilized by the Kleins as a supposed purchaser of the property desired to be purchased by the county commissioners. This phony purchaser entered into a supposed but phony purchase and sales agreement with the defendants, Klein and Goodfriend, wherein and whereby it paid to the Kleins and Goodfriend the sum of $1,600,000.00 (rather than its true value *49 of $800,000.00, as reflected in the resolution of the county as aforesaid) as the purchase price of said property. The Kleins and Goodfriend conveyed the property to the J & J Realty Co., a Florida corporation, and received from said corporation no cash in return, but only a mortgage from the said corporation encumbering said property for the total sum of $1,440,000.00, with interest at the rate of 5% per annum. Actually, the J & J Realty Co., a Florida corporation, had not agreed to purchase the property from the Kleins and Goodfriend, but the truth is, the county commissioners of Broward County agreed to purchase the property on behalf of the county for $1,600,000.00 and agreed to pay $160,000.00 in cash and to pay a mortgage of $1,440,000.00, which was to be created against the property by this fiction, the J & J Realty Co., a Florida corporation, who though owned and dominated by the Kleins and Goodfriend, was acting as a vehicle employed by the county commissioners to create said indebtedness against said property.
"7) As a part of said plan or scheme the county commissioners procured the incorporation of a dummy corporation known as the Broward Public Recreation Association. The said association obtained a charter as a non-profit corporation on the 20th day of September, 1954. This corporation has never had any assets, any cash, or any organization. It is merely a name clothed with a fictitious corporate entity, but without corporate substance and without corporate purpose. It was created solely as a tool of the county commissioners to implement the said commissioners' gimmick or device.
"8) After the feigned sale had been accomplished, whereby the Kleins and Goodfriend conveyed the said property to the J & J Realty Co., a Florida corporation, after that corporation had delivered to the Kleins and Goodfriend notes evidencing the alleged purchase price of said property and a mortgage upon said property securing said notes, thereupon, the J & J Realty Co., a Florida corporation, on September 21, 1954, conveyed the said property to the said Broward Public Recreation Association. * * *.
"9) The execution of all these instruments did not effectuate a bona fide sale of said property for the reason that the true sellers of said property, the Kleins and Goodfriend, had not accomplished a conveyance of the said property to the true purchasers; that is, the County of Broward through its defendant commissioners, and the two corporations were mere contrivances dominated by the county commission of Broward County as its pawn and dummies to aid it in making an illegal and unlawful purchase of said property. On the 21st day of September, 1954, the Broward Public Recreation Association conveyed the above-described property to Broward County; a true copy of which deed is hereto attached and marked Exhibit "D" and made a part hereof. At the time the J & J Realty Co., a Florida corporation, conveyed said property to the non-profit corporation, the parties-defendant tried to make it appear that the non-profit corporation had paid to the J & J Realty Co., a Florida corporation, $160,000.00 as cash which was supposed to be the cash required to accomplish the purchase and sale of said property under the terms and provisions of the agreement between the Kleins and the county commissioners of Broward County. The truth is, notwithstanding all the camouflage adopted, the said non-profit corporation did not pay the $160,000.00 cash payment and the fact is it never had any assets or any cash and was never capable of making such payment. * * *.
* * * * * *

*50 "11) The annual budget for the fiscal year of 1953-1954 of the Board of County Commissioners of Broward County under which the county commissioners were operating on September 21, 1954, and prior thereto, contained no funds which might be utilized for the purchase of land for beach purposes, and in order to carry into execution the scheme designed to purchase the lands hereinabove described and to circumvent the prohibition imposed by the Constitution of Florida, the county commissioners, with the knowledge and approval of the defendants herein, undertook to borrow from the defendant banks the sum of $160,000.00 for the cash payment received by the Kleins and Goodfriend for the purchase of said lands. To evidence the indebtedness due to the defendant banks the county commissioners issued certificates of indebtedness in the aggregate of $160,000.00, together with interest thereon at the rate of 4% per annum, and to secure the payment thereof, the county commissioners pledged the entire capital outlay reserve fund for the following fiscal year of 1954-1955 in the estimated amount of $786,152.13. Thus, the county commissioners pledged all of the 1954-1955 capital outlay funds to be raised from ad valorem taxes specifically to the payment of the certificates of indebtedness issued to the defendant banks in violation of the provisions of the Constitution of Florida.
* * * * * *
"13) The plaintiff avers that the said device, gimmick or scheme employed as aforesaid, does not successfully circumvent the provisions of the Constitution and of the Laws of the State of Florida, and that the said maneuvering should not stand as valid and appropriate public financing for the following reasons:
"(a) The county commissioners of Broward County have placed the taxpayers, the citizens and the present Board of County Commissioners and all subsequent Boards of County Commissioners and officials of the county under compulsion and financial duress to levy, assess and collect a tax each year sufficient to pay the annual maturities on said mortgage indebtedness, together with interest thereon under pain of forfeiting the public funds that have been paid as the purchase price to the date of any refusal of the county to make any such levy, assessment, collection or payment.
* * * * * *
"(d) The right to the acceleration of the indebtedness contained in said mortgage deed and which has been agreed to by the county commissioners for a default in payment of principal or interest, is harsh, inequitable and renders said transaction unconscionable.
"(e) The employment and utilization of the fictional corporate entities by the county commission to create said indebtedness for and on behalf of the said county, renders the county liable for said indebtedness and the improper employment of corporate fictions as agencies of the county to escape liability are ineffectual to relieve the county of its legal responsibility and such indebtedness has been created without the approval of the freeholders of the county as required by law."
By those allegations the complaint presented the following ultimate facts: that Broward County undertook to purchase certain lands for improvement and operation as a beach park recreational area, under enabling legislation which included permission to issue bonds for that purpose up to $2,500,000 provided they were supported by an approving vote as required by Article IX, Section 6, of the State Constitution; that the County's proposal to issue the bonds received an adverse vote of the people; that the County then proceeded to purchase the property in question from the *51 defendant owners at a price of $1,600,000, the terms being $160,000 cash and subject to a mortgage for the balance payable over a period of years with interest; that the cash payment was raised by the County by borrowing $40,000 from each of the four defendant banks and for the repayment of which certain cash resources of the County for the ensuing fiscal year were pledged; that the property passed through certain dummy corporations, one of which executed the mortgage to the sellers for $1,440,000; that the County made the cash payment of $160,000, and the property was conveyed to the County subject to the mortgage; and that the County did not assume the mortgage or become expressly obligated thereon.
Thus it is made to appear by the complaint that the plan of financing by which the County intended to make deferred payments for the property was one which necessarily involved pledging the general credit of the County for a continuing obligation with interest thereon over a period of future years. This is so, because when the County acquired the property the mortgage to which it was subject became a charge against the property, and the County was placed in a position of being coerced to meet the annual requirements for interest and maturing principal under the mortgage. The alternative would be to lose the property by foreclosure. The County can be expected to expend substantial sums for development of the property and to equip it for the public purposes for which it was acquired. That added investment would increase the loss to the County if the mortgage should be foreclosed, and it stimulates the coercive effect of the mortgage, compelling its payment by the County.
A scheme of financing which directly or indirectly obligates a taxing unit such as a county to pay a sum with interest extending over a period of years is in effect an attempt to create a binding, continuing interest-bearing contract obligation to pay money in the future, which violates the intent of the provision of Section 6 of Article IX of the Constitution granting power to issue bonds other than refunding bonds "only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such Counties, * * * shall participate". In re Advisory Opinion to Governor, 94 Fla. 967, 114 So. 850; State ex rel. Davis v. Green, 95 Fla. 117, 116 So. 66; Sholtz v. McCord, 112 Fla. 248, 150 So. 234; Herbert v. Thursby, 112 Fla. 826, 151 So. 385; Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558; Brash v. State Tuberculosis Board, 124 Fla. 167, 167 So. 827; Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 So. 356; State v. Calhoun County, 125 Fla. 263, 169 So. 673; State v. Calhoun County, 127 Fla. 304, 170 So. 883; Broward County Port Authority v. State, 129 Fla. 73, 175 So. 796; State v. Florida State Imp. Commission, Fla. 1950, 47 So.2d 627.
Appellant's contention that in checking this transaction against the Constitution, the compelling necessity for the County to levy taxes to pay off such mortgage is regarded as the equivalent of an express obligation to do so, finds support in three of the cases just cited, Brash v. State Tuberculosis Board, supra, Kathleen Citrus Land Co. v. City of Lakeland, supra, and Broward County Port Authority v. State, supra.
If the case made out by the complaint were less clear, and it was necessary to resort to a rule of construction, Kathleen Citrus Land Co. v. City of Lakeland, supra, tells us that in testing any scheme of financing, doubts as to its transgression of the constitutional limitation should be resolved against the public officials and in favor of the people.
The County was given express authority and power to purchase the lands. The propriety of the purchase and the desirability *52 of the particular property for the public purposes and uses intended for it were questions for the administrative determination of the County Commission. It is not the acquisition of the property, but the plan chosen to pay for it, which is claimed to infringe a constitutional requirement.
It was error to dismiss the suit. The complaint presents a cause of action to compel a rescission, unless and until the present deferred payment plan has been approved under the provisions of Section 6 of Article IX of the Constitution, or unless some other payment plan is arranged, and approved under the Constitution.
Reversed, and remanded for further proceedings.
DREW, C.J., and TERRELL and THORNAL, JJ., concur.