### STRELL, et al v. DADE COUNTY.
No. 60 C 8986.

Circuit Court, Dade County.
June 20, 1961.

Harry B. Smith and Bernard S. Mandler, both of Miami Beach, for plaintiffs.

Darrey A. Davis, County Attorney, for defendant Dade County.

Jack R. Rice, Jr., Ass't. City Attorney, for City of Miami, intervenor.

ROBERT L. FLOYD, Circuit Judge.

This cause came on regularly for trial and final hearing, pursuant to order of court, upon the issues raised and the matters presented by the plaintiffs' complaint, the interrogatories propounded and depositions taken by plaintiffs, the motion to dismiss, answer, and motion for summary decree of the defendant, Dade County, and the petition for intervention (answer) filed by the City of Miami. The court has considered the pleadings and file in this cause, and has heard arguments of counsel for the respective parties.

A hearing in this cause was had on September 28, 1960, upon plaintiffs' application for preliminary injunctive relief. At such prior hearing, extensive argument was presented upon the issues

made by the complaint and the answer of Dade County. Pursuant to such hearing, an order denying plaintiffs' application for injunctive relief was entered on September 29, 1960, and recorded in chancery order book 1472 at page 563. A transcript of the proceedings had at such hearing was considered on final hearing.

The court finds, from a review and consideration of the pleadings on file in this cause, the exhibits, and arguments of counsel, that there are no material factual issues involved, only questions of law are presented for determination.

This cause presents for determination the validity of a joint resolution of the board of county commissioners of Dade County and the commission of the City of Miami (being county resolution no. 4830 adopted April 5, 1960, and city resolution no. 31837 adopted April 6, 1960), providing for the construction of new seaport facilities on Dodge Island by Dade County with the cooperation and assistance of the City of Miami.

The City of Miami for many years owned and operated seaport facilities, known as the Port of Miami, originally constructed in 1912. In recent years, it has been repeatedly asserted that construction of new, modern and adequate seaport facilities constituted one of the most urgent needs for the economic development of this metropolitan area. It was concluded that Dodge Island in Biscayne Bay provided the most appropriate and feasible site for construction of the new seaport. The City of Miami has been unsuccessful in its efforts to accomplish the construction of new seaport facilities.

The City of Miami and Dade County undertook to provide for the construction of a new seaport as a joint venture and cooperative program. The mutual understandings and intentions of the two governmental units were embodied and expressed in a joint resolution adopted by their respective governing bodies. Under the terms of this joint city and county resolution, the county agreed to assume and accept full responsibility for constructing and operating new seaport facilities on the Dodge Island site in substantial accordance with the plans previously prepared by the city. The city conveyed to the county title to the Dodge Island site, together with title to the existing seaport facilities. The city also turned over to the county all city funds accumulated for seaport construction purposes. It was contemplated that the income and revenues derived from operating the old seaport facilities would be utilized towards payment of the costs of constructing the new seaport facilities, and when the new seaport was completed the old seaport property would be reconveyed by the county

to the city. Upon completion of the construction of the new seaport, the city will be reimbursed for the appraised value of the Dodge Island site, and other costs and expenses, from the net revenues accruing from the operation of the new seaport. The financial responsibility of the county under this cooperative governmental program is set forth in the joint resolution, as follows—

> *Section 2.* The county commission, subject to constitutional and statutory requirements, agrees to undertake to provide the approximate sum of $2,000,000 annually by means of county ad valorem taxes in the county budget for the 1960-1961 fiscal year and subsequent years until such time as said seaport facilities shall have been fully completed; and the county also shall provide the funds necessary for the proper operation and maintenance of such seaport facilities. * * *

> *Section 11.* It is mutually understood and agreed . . . that the county commission may seek approval of the provisions of section 2 hereof by the freeholders at an election called for such purpose, if deemed necessary or desirable.

The plaintiffs instituted this taxpayers suit against the county (the City of Miami intervened prior to final hearing) praying that the court declare the joint resolution unconstitutional and null and void, and that the county commission be enjoined and restrained from constructing the new seaport, and from assessing, levying or collecting any county taxes for such purpose. The county, by way of affirmative relief, prays for a decree declaring and adjudicating the validity of such joint resolution and the actions taken under and pursuant thereto.

The plaintiffs contend that the joint resolution is so vague, ambiguous and incapable of interpretation that it is meaningless and invalid as a matter of law; that the city commission and the county commission were without lawful power and authority to adopt such joint resolution; and that the joint resolution violates the provisions of article IX, section 6 of the Florida constitution.

The contention that the joint resolution is vague, ambiguous and incapable of interpretation is without merit. The joint resolution clearly and concisely sets forth in plain, understandable language the mutual understandings and intentions of the two governmental units involved and provides a basic framework for carrying the joint program into execution. Some of the details of the program must be ultimately provided by further action of the city commission and the county commission. The rights of the plaintiffs and other taxpayers are protected and preserved in that any actions taken under and pursuant to this joint resolution that deviate from the requirements of law may be submitted to the court for appropriate review and correction.

The contention that the city commission and county commission are without lawful authority to do what they propose to do under the provisions of the joint resolution cannot be sustained. The city charter expressly authorizes the conveyance and disposition of municipal property. The wisdom of the city commission in exercising this power is something about which the courts are not privileged to speculate; the courts will not ordinarily substitute their judgment for that of the governing body of a governmental entity when such elected officials act within the orbit of their lawful authority. See Broward County Rubbish Contractors Assoc. v. Broward County, Fla. App. 1959, 112 So.2d 898, and cases therein cited. The Home Rule Charter and chapter 22963, Acts of 1945, Laws of Florida, as amended (Port Authority Act) authorize the county commission to construct, operate and maintain seaports. Moreover, the Home Rule Charter (sections 1.01 A (17) and 5.06) empowers the county and every municipality in Dade County to enter into contracts with other governmental units for the joint performance of any authorized governmental function.

The main assault made by plaintiffs upon the joint resolution is predicated upon the premise that it violates the intent of the provisions of section 6 of article IX of the Florida constitution granting power to issue bonds only after approval of the freeholders. The plaintiffs contend that the joint resolution is invalid and unconstitutional because it was not approved by a majority of the freeholder electors in accordance with the requirements of the constitutional provisions governing general obligation bonds.

The Supreme Court of Florida, in State v. Florida State Improvement Commission, Fla. 1950, 47 So.2d 627, and Leon County v. State, 122 Fla. 505, 165 So. 666, construed such constitutional provisions to mean that — "Any contractual device for the present funding of tax revenues contemplated to be raised or made available for reimbursement in future years, contrived to be issued as an enforceable legal security to the obligee, or his assignee, by means of which such obligee or his assignee will acquire *a legal or equitable right to coerce by judicial process the repayment of a sum of money advanced* on the strength thereof, together with interest for the hire of the amount advanced, however calculated or provided to be paid upon the sum so involved, is in contemplation of amended section 6 of article 9 of the constitution of Florida a 'bond' and within the purview of the specific prohibitions and limitations of that section as to the issuance of 'bonds'." (Italics added.)

The criterion for determining whether any given contractual arrangement or governmental action falls within the purview of article IX, section 6 of the constitution is the remedy available in event of default. In Sunshine Const. of Key West, Inc. v. Board of Commissioners, Monroe County, Fla. 1951, 54 So.2d 524, the Supreme Court said — "The ultimate test of the validity of obligations issued without an approving vote of freeholders who are qualified electors is the remedy of the holder in event of default."

And in State v. Florida State Turnpike Authority, Fla. 1955, 80 So.2d 337, the Supreme Court said — " . . . The criterion is the legal remedy available in case of default, State v. Board of Control, Fla., 65 So.2d 469, and the Act and the proposed instrument serve notice on everyone concerned that there could be no affront to the sections of the constitution which appellant cites. The language in the pertinent portion of section 6 of article IX is so plain as to defy elucidation. . ."

The statement of intent made by the county commission in the joint resolution to undertake to provide the approximate sum of two million dollars annually (subject to constitutional and statutory requirements) is not susceptible to the construction that it creates a present debt payable from future county taxes. No enforceable obligation is created or intended to be created that would compel future county commissioners to levy taxes for the repayment of any presently existing indebtedness. No legal or equitable right is vested in the City of Miami to coerce the county commission by judicial process to levy county taxes for construction of the proposed new seaport. Each succeeding board of county commissioners has the discretion to determine whether the county budget for any particular fiscal year shall include funds for seaport construction purposes. The only remedy available to the City of Miami would be the right to seek a return or reconveyance of the city property made available to the county. The city is not vested with any right to compel any county taxes to be levied for any purpose. The joint resolution expressly provides that all sums of money due to the city shall be paid from the net revenues derived from the operation of the old and new seaport facilities. The construction and finance schedule attached to and made a part of the joint resolution indicates an intention that the new seaport will be constructed in self-sufficient stages and financed on a "pay as you go" basis, dependent upon the availability of funds currently on hand. This would seem clearly to eliminate any possibility of economic compulsion being imposed upon the county commission, or the creation of a compelling necessity equivalent to an express present obligation to levy future taxes,

as frowned upon by the Supreme Court in Hollywood, Inc. v. Broward County, Fla. 1956, 90 So.2d 47; Broward County Port Authority v. State, 129 Fla. 73, 175 So. 796; Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 So. 356; and Brash v. State Tuberculosis Board, 124 Fla. 167, 167 So. 827.

The court finds and determines that the joint resolution of the board of county commissioners and the commission of the City of Miami does not violate or infringe upon the inhibitions of the applicable provisions of article IX, section 6 of the Florida constitution, and that the validity of such joint resolution should be upheld and sustained as against the grounds and reasons asserted by the plaintiffs for its invalidity and unconstitutionality.

The court further finds and determines that there is no genuine issue as to any material fact and that the defendant, Dade County, is entitled to a final decree dismissing this cause.

Accordingly, it is ordered, adjudged and decreed that the complaint filed in this cause be and it is hereby dismissed with prejudice at the cost of the plaintiffs.