Dawson A. McQuaig City of Jacksonville General Counsel Jacksonville
QUESTIONS:
1. Does the 7.5-percent per annum interest rate provided for in s. 215.685, F. S., apply not only to bonds but also to purchase contracts, conditional sales contracts, and lease purchase contracts for the procurement of personal property?
2. To what extent do the provisions of s. 215.685 supersede and govern other statutes or acts relating to the payment of interest?
SUMMARY:
Until judicially or legislatively determined to the contrary, the 7.5-percent per annum interest rate provided for in s. 215.685, F. S., applies not only to bonds but also to other contractual arrangements of every kind or description entered into by a public body which obligates it to pay a sum of money with interest extending over a period of time. The interest rate limitation contained in s. 215.685 is not applicable to those statutes or legislative acts which, when authorizing a public body to issue bonds or to enter into other obligations of any kind or character, authorize a higher rate of interest than that provided in s. 215.685 or do not establish any interest rate at all for such bonds or obligations.
AS TO QUESTION 1:
Section 215.685(1), F. S., provides:
 Bonds, certificates, or other obligations of any type or character, authorized and issued by counties, municipalities, town, villages, districts, commissions, authorities, or any other public body, agency, or political subdivision of the state may bear interest at a rate not to exceed 7.5 percent per annum. (Emphasis supplied.)
Section 215.685(2), F. S., provides that, upon the request of the issuing unit and when it appears to be in the best interest of the public, the State Board of Administration may authorize, for a specific issue of bonds, certificates, or other obligations of any type or character, a rate of interest in excess of the maximum rate set by law. Section 215.685 was adopted during the 1969 Special Legislative Session, see ch. 69-1739, Laws of Florida, and has been subsequently amended by ch. 74-259, Laws of Florida, which added subsection (2) to the statute. Initially, it should be noted that s. 215.685 does not authorize a public body to issue or to enter into such obligations or to pay interest thereon but rather imposes a maximum rate of interest on such obligations when the authority to enter into such obligations and to make such interest payments has been granted elsewhere by the Legislature. Section 215.685(3), however, provides that nothing contained in the statute shall affect or apply to those laws authorizing such obligations which have a higher interest rate limitation or no interest rate limitation.
You state that it has been argued that the provisions of s. 215.685, F. S., and the interest rate limitation contained therein, are applicable only to ad valorem and revenue bonds based upon the catchline to the section contained in the Florida Statutes and the language `authorized and issued' used within the statute itself which is `jargon applicable to `bonds." The catchline to s. 215.685, however, `[s]tate, county, municipal, etc., bonds; maximum rate of interest,' appears to have been supplied by the statutory reviser rather than by the Legislature and thus is of little assistance in interpreting the statute's provisions. Cf. Berger v. Jackson, 23 So.2d 265, 267 (Fla. 1945) (heading of section when provided by Legislature is not to be classed with words or titles used by compilers of statutes as sort of index to what section refers or is about); AGO 057-314; and 82 C.J.S. Statutes s. 350 (when meaning of enacting clause is clear, it cannot be controlled by the headings thereof, especially when headings have been prepared by the compilers and not by the Legislature). Compare with the title to ch. 74-259, Laws of Florida, which states: `An act relating to bonds and other obligations, allowing the state board of administration to authorize a rate of interest for certain bonds and other obligations in excess of the maximum rate set by law . . . .' Nor can this office conclude that the application of s. 215.685 is restricted to bonds based solely upon the language `authorized and issued' contained in the statute in light of the express and broad terms of the statute referring to obligations of any type or character.
My examination of the titles to and the enacting provisions of the enabling statutes relating to s. 215.685, F. S., failed to reveal any clear expression of legislative intent. The language used in the statute itself, however, is expansive and would appear to encompass more than merely ad valorem and revenue bonds. While bonds are expressly included within the statute's coverage, the interest rate limitation, however, contained therein also applies to `other obligations of any type or character.' If this phrase were deemed to refer only to bonds, its presence within the statute would be repetitous and unnecessary as the statute already expressly includes bonds. Generally words in a statute will not be construed as surplusage if a reasonable construction which will give them force and meaning is possible. See Pinellas County v. Woolley, 189 So.2d 217 (2 D.C.A. Fla., 1966); see also State Department of Public Welfare v. Bland, 66 So.2d 59 (Fla. 1953), and State ex rel. Florida Industrial Commission v. Willis,124 So.2d 48 (1 D.C.A. Fla., 1960), cert. denied, 133 So.2d 323 (Fla. 1961). Cf. 82 C.J.S. Statutes s. 343. Therefore, in order to give meaning to all the words in s. 215.685, the term `obligations of any type or character' must be considered to encompass more than merely bonds.
The term `obligation' generally implies a duty. See 67 C.J.S.Obligations, p. 16 (term `obligation' used to designate a contract or instrument which confers rights and duties on parties thereto). See also Ballentine's Law Dictionary Obligation, p. 878 (3rd ed. 1969) (that which binds as an oath, vow, promise, contract or debt); Black's Law Dictionary Obligation, pp. 1223-1224 (4th Rev. ed. 1968) (as a legal term `obligation' originally meant a sealed bond but it now extends to any written promise to pay money or to do a specific thing). Accord: Lee v. Kenan, 78 F.2d 425 (5th Cir. 1935). The statute refers to obligations of any type or character. The term `any' is a flexible term; therefore, an examination must be made as to the manner in which it is being used in a given instance. When, however, the context so indicates, the term may be construed to mean `all,' `all or every,' or `every.' 3A C.J.S. Any, p. 903-904. See alsoWebster's Third International Dictionary Any, p. 97; Ballentine's Law Dictionary Any, p. 80 (3rd ed. 1969); and Black's Law Dictionary Any, p. 120 (4th Rev. ed. 1968) (`any' is given the full force of `every' or `all'). Cf. State v. Florida Improvement Commission, 47 So.2d 627, 631 (Fla. 1950), in which the Florida Supreme Court, in considering what constituted a bond within the purview of s. 6, Art. IX, State Const. 1885 (the precursor of s. 12, Art. VII, State Const. 1968), stated:
 [I]t may be said that `Any contractual device for the present funding of tax revenues contemplated to be raised or made available for reimbursement in future years, contrived to be issued as an enforceable legal security to the obligee, or his assignee, by means of which such obligee or his assignee will acquire a legal or equitable right to coerce by judicial processes the repayment of a sum of money advanced on the strength thereof, together with interest for the hire of the amount advanced, however calculated or provided to be paid upon the sum so involved, is in contemplation of amended section 6 of article 9 of the Constitution of Florida a `bond' and within the purview of the specific prohibitions and limitations of that section as to the issuance of `bonds."
See also Hollywood, Inc. v. Broward County, 90 So.2d 47, 51 (Fla. 1956), in which the court stated that a scheme of financing which directly or indirectly obligates a taxing unit such as a county to pay a sum with interest extending over a period of years is in effect an attempt to create a binding, continuing, interest-bearing contract obligation to pay money in the future and is subject to the constitutional provision granting the power to issue bonds other than refunding bonds only after an approving referendum, and AGO 080-25, concluding that a contractual arrangement providing for payments on a deferred basis would be in the natrue of a revenue certificate as provided in s.125.01(1)(r), F. S., and in light of s. 125.03(3), F. S., when funded by non-ad valorem tax revenues.
Therefore, based upon the foregoing and until legislatively or judicially determined to the contrary, I am of the opinion that the provisions of s. 215.685, F. S., apply not only to bonds issued by a public body but also to other contractual arrangements of every kind or description entered into by a public body which obligate such a body to pay a sum of money with interest extending over a period of time. It should be noted, however, that the 1980 Legislature, now in session, is considering a bill which, if adopted, would repeal s. 215.685 and replace it with a statute to be numbered s. 215.84, placing a maximum rate of interest on bonds issued by a governmental unit as defined therein. See House Committee on Community Affairs Bill #8.
AS TO QUESTION 2:
Section 215.685(3), F. S., provides:
 All laws or parts of laws, whether special or general, in conflict herewith are expressly repealed and superseded by this section, provided that nothing contained herein shall affect or apply to any act authorizing bonds or other obligations having a higher interest rate limitation or no interest rate limitation.
You indicate that the foregoing statutory provision has been interpreted in several different ways. Under one view, the interest rate limitation contained in s. 215.685 applies only in regard to those statutes or acts of the Legislature which specifically provide for a rate of interest less than 7.5 percent per annum. However, under another interpretation of the statute, the interest rate limitation contained in s. 215.685 would apply unless a statute or legislative act expressly excluded the interest rate limitation from bonds or other obligations issued under its authority. Still another interpretation is that the 7.5-percent per annum maximum interest rate applies in all instances unless a statute or act permits a higher rate of interest or specifically empowers the public body to determine and fix the interest rate.
My examination of the enabling legislation for this statutory provision failed to provide much assistance in determining the legislative intent. Furthermore, the parameters of this statutory provision do not appear to have been considered by the courts of this state. It is, however, a rule of statutory construction that, in determining the meaning of words used in a statute, their plain and obvious meaning should be used unless a technical meaning is clearly intended or a different connotation expressed in or necessarily implied from the context in which they appear. See
Graham v. State, 362 So.2d 924 (Fla. 1978); Gaulden v. Kirk,47 So.2d 567 (Fla. 1950); and State ex rel. Hanbury v. Tunnicliffe,124 So. 279 (Fla. 1929). Moreover, when the language of the statute is clear and unequivocal, the legislative intent may be gleaned from the words used without applying incidental rules of construction. See Reino v. State, 352 So.2d 853 (Fla. 1977), and State v. Egan, 287 So.2d 1 (Fla. 1973). Subsection (3) expressly limits the application of s. 215.685; those laws which authorize a higher rate of interest or which do not establish a limit on the interest rate are not, under the provisions of subsection (3), subject to the maximum rate of interest established in s. 215.685. The section does not require that such an enabling statute or legislative act contain a specific exemption or include a specific reference to s. 215.685 or provide that the interest rate limitation contained therein is not applicable nor does it specifically preserve the right of a public body to determine and fix its own rate of interest in order to be exempted from the section's provisions. Nor can such a requirement be implied by this office in the absence of a clear expression of legislative intent to that effect. No such evidence of legislative intent has been brought to the attention of this office. I have been informed, however, that the State Board of Administration generally has considered any general or special law which, authorizing the issuance of bonds or other obligations and the payment of interest, specifies a higher rate of interest or does not contain a maximum rate of interest, to be exempt from the 7.5-percent per annum interest rate limitation contained in s. 215.685.
I am therefore of the opinion that, until judicially or legislatively determined to the contrary, the interest rate limitation contained in s. 215.685, F. S., is not applicable to those statutes or acts of the Legislature which, when authorizing a public body to issue bonds or to enter into other obligations of any kind or character, authorize a higher rate of interest than that provided in s. 215.685 or do not establish any interest rate at all for such bonds or obligations. It should be noted, however, as discussed in the previous question, that the House Committee on Community Affairs is considering a bill for passage during the 1980 legislative session, which would repeal the provisions of s. 215.685 and create a new provision to be numbered s. 215.84, establishing a maximum rate of interest on bonds. See House Committee on Community Affairs Bill #8. [Note. — See ch. 80-318, Laws of Florida.]
Prepared by: Joslyn Wilson, Assistant Attorney General