155 So.2d 787 (1963)
Theodore R. CARTER, Appellant,
v.
STATE of Florida, Appellee.
No. 32271.
Supreme Court of Florida.
July 3, 1963.
Rehearing Denied September 13, 1963.
*788 Ives & Davis and Garlon A. Davis, W. Palm Beach, for appellant.
Richard W. Ervin, Atty. Gen., and James G. Mahorner, Asst. Atty. Gen., for appellee.
DREW, Justice.
This appeal is from a judgment of conviction and sentence based upon a jury verdict finding the appellant Carter, a chiropractor, guilty of attempted abortion. The trial court, in denying motions to quash the information and subsequently for new trial, expressly sustained the validity of F.S. Section 797.01, F.S.A.,[1] against alleged violation of Sections 1, 11, and 12, Decl. Rights, Florida Constitution, F.S.A., and Amendments XIV and VI, U.S. Constitution.
The constitutional issue posed by appellant goes to the provision of the cited statute penalizing anyone who "unlawfully administers * * * or unlawfully uses any instrument" with intent to procure miscarriage. (e.s.) The contention is that this statutory proscription must fail because the lack of definition of the word "unlawfully" results in ambiguity infringing basic concepts of due process in criminal law.[2]
The legislative history of Sec. 797.01 indicates its original enactment in 1868 as a part of Chapter 1637, Sec. 9 of sub-chapter VIII, Laws of Florida, entitled "An Act to provide for the Punishment of Crime, and Proceedings in Criminal Cases." By another provision of the same act, Sec. 11 of sub-chapter III,[3] the legislature defined abortion, for homicide purposes, to be unlawful, or forbidden, "unless the same shall have been necessary to preserve the life of such mother, or shall have been advised *789 by two physicians to be necessary for such purpose." We conclude that under these circumstances the rule of pari materia construction, in conjunction with the obligation to give, if possible, some reasonable effect to the statutory language, requires a definition of the term "unlawful" in Section 797.01 in accordance with the companion provision of the homicide statutes prescribing the penalty for certain abortions resulting in death. We therefore construe the subject provision to proscribe and penalize the enumerated acts, performed with the requisite intent, in every instance except when necessary to preserve the life of a woman or "advised by two physicians to be necessary for such purpose." This effects a result which is in accord with the apparent intent of the act and which, in any event, is subject to future expression of the legislative will.
Appellant also contends that the court erred in denying his motion for directed verdict on the ground of entrapment. The record evidence indicates that in the course of police investigation initiated on the basis of independent circumstances involving appellant's brother, also a chiropractor with offices in the area, appellant answered a telephone inquiry in his brother's office and agreed to substitute for him in an appointment made previously by the investigating officer who told appellant "I couldn't wait any longer, because the girl was about nine weeks overdue." The testimony further was that appellant, in discussion with the parties, after price and terms had been settled, assured them "that he had done this thing before to many girls." None of the authorities to which we are referred in this or other jurisdictions would support the instruction of a verdict on the theory of entrapment in the circumstances of this case.[4] The trial court, in our opinion, properly left to the jury, upon all the evidence and under instructions which are not questioned on this appeal, the question of whether defendant was merely presented with the opportunity of committing a crime or whether the criminal design or intent originated in the minds of the officers who by persuasion induced its commission by the accused.
Appellant also asserts that the evidence is insufficient as a matter of law to support the conviction of attempted abortion for lack of the essential "overt act apparently adapted to effect that intent [to commit a crime], carried beyond mere preparation, but falling short of execution of the ultimate design."[5]
Even if we assume that the overt act here involved, the use of a speculum employed in numerous medical examinations, is itself equally consistent with guilt and innocence, a distinction must be drawn between the situation where all the facts in evidence can be otherwise explained and the case, such as that at bar, where there is evidence from which the jury may find criminal intent quite independent of the overt act toward execution, which need not in itself be unlawful except as a fragment of the intended offense.[6] In the circumstances of this case the use of the instrument cannot reasonably be characterized as mere preparation.
The judgment of conviction should accordingly be affirmed. It is so ordered.
DREW, C.J., and TERRELL, O'CONNELL, CALDWELL and HOBSON (Ret.), JJ., concur.
THOMAS and ROBERTS, JJ., dissent.
THOMAS, Justice (dissenting).
I dissent because I think this was a classic instance of entrapment.
ROBERTS, J., concurs.
NOTES
[1] "797.01 Performing abortion; punishment. Whoever with intent to procure miscarriage of any woman unlawfully administers to her, or advises or prescribes for her, or causes to be taken by her, any poison, drug, medicine or other noxious thing, or unlawfully uses any instrument or other means whatever with the like intent, or with like intent aids or assists therein, shall, if the woman does not die in consequence thereof, be punished by imprisonment in the state prison not exceeding seven years, or by fine not exceeding one thousand dollars."
[2] Locklin v. Pridgeon, 158 Fla. 737, 30 So.2d 102.
[3] Appearing in the current Florida Statutes as follows:

"782.10 Abortion. Every person who shall administer to any woman pregnant with a quick child any medicine, drug or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case the death of such child or of such mother be thereby produced, be deemed guilty of manslaughter."
[4] Cf. Dupuy v. State, Fla.App., 141 So.2d 825; Lashley v. State, Fla. 1953, 67 So.2d 648; and Langford v. State, 111 Fla. 506, 149 So. 570, Anno. 53 A.L.R.2d 1156.
[5] Gustine v. State, 86 Fla. 24, 97 So. 207.
[6] Wharton's Criminal Law, Vol. I, Sec. 74.