250 So.2d 857 (1971)
Roy Blackburn WALSINGHAM et al., Appellants,
v.
STATE of Florida, Appellee.
No. 40210.
Supreme Court of Florida.
July 12, 1971.
*858 Jack T. Edmund, of Edmund & McDaniel and Robert E. Pyle, Lake Alfred, for appellants.
Robert L. Shevin, Atty. Gen., and John A. Zebedee, Tallahassee, for appellee.
ADKINS, Justice.
This is an appeal from the Circuit Court of Hillsborough County, having been transferred to this Court from the District Court of Appeal, Second District.
The Appellants were convicted of the offense of conspiracy to commit abortion and, on appeal, contend that the trial court erred in defining the offense of abortion in its instructions to the jury. Also, by motion to dismiss the information, the Appellants attacked the constitutionality of Fla. Stat. §§ 797.01 and 782.10, F.S.A. Our appellate jurisdiction has been invoked by virtue of the order of the trial judge denying the motion to dismiss and thereby passing directly upon the constitutionality of these statutes.
It is well settled that this Court will not decide the constitutionality of a statute where its decision can rest on other grounds. State ex rel. Losey v. Willard, 54 So.2d 183 (Fla. 1951); Peters v. Brown, 55 So.2d 334 (Fla. 1951). The conviction of the Appellants should be set aside because of the erroneous instruction by the trial judge.
The trial judge instructed the jury as follows:
"[T]he charge here is conspiracy to commit an abortion. In order to define that charge to you, I must define in some fashion the offense of abortion under the Florida law. The Statute pertaining to that is as follows: Whoever with intent to procure miscarriage of any woman unlawfully administers to her, or advises, or prescribes for her, or causes to be taken by her any poison, drug, medicine, or other noxious thing, or unlawfully uses any instrument or other means whatever with like intent, or with like intent aids, or assists therein, shall, if the woman does not die in consequence thereof, be guilty of performing an abortion." (Tr. 410)
Fla. Stat. § 797.01, F.S.A., reads as follows:
"Whoever with intent to procure miscarriage of any woman unlawfully administers to her, or advises or prescribes for her, or causes to be taken by her, any poison, drug, medicine or other noxious thing, or unlawfully uses any instrument or other means whatever with the like intent, or with like intent aids or assists therein, shall, if the woman does not die in consequence thereof, be punished by imprisonment in the state prison not exceeding seven years, or by fine not exceeding one thousand dollars."
In Carter v. State, 155 So.2d 787 (Fla. 1963), this Court was presented with the question of whether Fla. Stat. § 797.01, F.S.A., should fall because the lack of definitiveness of the word "unlawfully" resulted in an ambiguity infringing basic concepts of due process in criminal law. In order to uphold the constitutionality of the statute, this Court considered it in pari materia *859 with Fla. Stat. § 782.10, F.S.A., in the following language:
"The legislative history of Sec. 797.01 indicates its original enactment in 1868 as a part of Chapter 1637, Sec. 9 of sub-chapter VIII, Laws of Florida, entitled `An Act to provide for the Punishment of Crime, and Proceedings in Criminal Cases.' By another provision of the same act, Sec. 11 of sub-chapter III, the legislature defined abortion, for homicide purposes, to be unlawful or forbidden, `unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose.' We conclude that under these circumstances the rule of pari materia construction, in conjunction with the obligation to give, if possible, some reasonable effect to the statutory language, requires a definition of the term `unlawful' in Section 797.01 in accordance with the companion provision of the homicide statutes prescribing the penalty for certain abortions resulting in death. We therefore construe the subject provision to proscribe and penalize the enumerated acts, performed with the requisite intent, in every instance except when necessary to preserve the life of a woman or `advised by two physicians to be necessary for such purpose.' This effects a result which is in accord with the apparent intent of the act and which, in any event, is subject to future expression of the legislative will." (pp. 788, 789)
In re-enacting Fla. Stat. § 797.01, F.S.A., the Legislature is presumed to be aware of the construction placed upon it by Carter v. State, supra, and, in the absence of clear expressions to the contrary, is presumed to have adopted the construction placed upon it by this Court. See Delaney v. State, 190 So.2d 578 (Fla. 1966).
Under the authority of Delaney v. State, supra, the term "unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose" became an integral part of the statute and the law of this State.
The trial court's instruction partially quotes Fla. Stat. § 797.01, F.S.A., but no reference whatsoever was made to the proviso contained in Fla. Stat. § 782.10, F.S.A., purportedly setting forth the circumstances under which an abortion may be lawfully performed. Carter v. State, supra, makes this proviso an integral part of Fla. Stat. § 797.01, F.S.A. The instruction of the trial court left the jury without a standard of lawfulness or unlawfulness with which to assess the acts of the Appellants.
Where the court attempts to define the crime for which an accused is being tried, it is the duty of the court to define each and every element. If the court fails to do this, the charge is necessarily prejudicial to the accused and misleading. Motley v. State, 155 Fla. 545, 20 So.2d 798 (1945). As stated in Croft v. State, 117 Fla. 832, 158 So. 454 (Fla. 1935):
"Where the trial court attempts to define the offense, for the commission of which an accused is being tried, it is the duty of the court to instruct the jury as to each and every essential element of the offense charged, and a charge attempting to define the offense which does not cover material elements of the offense is necessarily misleading and prejudicial to the accused. It is equivalent to directing the jury that it is not necessary for the state to prove any elements of the offense except those included in the definition given by the court." (p. 455)
The failure of the trial court to furnish the jury with a standard upon which to determine the lawfulness or unlawfulness of the acts of the Appellants conveyed to the jury the proposition that, if the Appellants were contemplating the abortion of a human fetus, the acts must of necessity be an unlawful abortion. This ignores the limitation placed upon the statute by Carter v. State, supra. The failure of the trial *860 judge in the case sub judice to provide a charge which lays down standards for the jury to follow under the varying permissible views of the evidence constituted reversible error. See Barnes v. State, 93 So.2d 863 (Fla. 1957).
There was no written request made by the Appellants for any charge relating to the elements of the crime of abortion. However, counsel for Appellants made the following objection after the instruction was given:
"[C]omes now the defendants and each of them, out of the presence of the Jury but before the Jury retires, and excepts to your Honor's instruction as relates to the definition of abortion under the laws of the State of Florida and on the grounds that such definition was vague, incomplete, and improper statement of the law and, in fact, no definition.
"Further, that it places a requirement upon the jurors to make the determination between lawfulness and unlawfulness which is a matter that is solely within the jurisdiction and province of the Court." (Tr. 424)
This was sufficient to make known to the Court the action which Appellants desired the court to take and their grounds for objecting to the charge as given by the court. See Fla.App. Rule 6.7(g), 32 F.S.A. The objection was a sufficient basis upon which appellate review can be had. Upon such review, we are of the opinion that the cause should be reversed because of the inadequacy of the instruction to the jury.
Without making any determination, it is appropriate that the deficiencies in the present statute be discussed with the hope legislative action may be taken in the future. There are serious questions as to the constitutionality of the statute.
Under Carter v. State, supra, the acts enumerated in Fla. Stat. § 797.01, F.S.A., are penalized in every instance except when "necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose."
The Supreme Court of the United States in United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (opinion filed April 21, 1971), considered a statute of the District of Columbia which provided in part:
"Whoever, by means of any instrument, medicine, drug or other means whatever, procures or produces or attempts to procure or produce an abortion or miscarriage on any woman, unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine, shall be imprisoned in the penitentiary not less than one year or not more than ten years; * * *." 22 D.C.Code § 201. (Emphasis supplied).
It should be noted that the District of Columbia statute penalized the enumerated acts unless the same were done as "necessary for the preservation of the mother's life or health," while the Florida statute penalizes the enumerated acts except when the same were done as necessary for the preservation of the mother's life. In United States v. Vuitch, supra, the defendant contended that the word "health" was so imprecise and had so uncertain a meaning that it failed to inform a defendant of the charge against him and therefore offended the due process clause of the constitution. The United States Supreme Court held that this contention was unfounded because the term "health" was not vague. It was further held that the burden was on the prosecution to plead and prove that an abortion was not "necessary for the preservation of the mother's life or health." It was also stated that the term "health" included psychological as well as physical well-being. The "health of the mother" was the governing standard. The Supreme Court of the United States did not determine the question of whether a provision making an exception using the term "necessary *861 to preserve the life of a mother" would be vague and indefinite.
There is serious question as to whether the Florida statute violates the well-settled principle that no person may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.
One difficulty with the statute is its attempt to define a medical problem in terms that are not understandable by the medical profession. A justified complaint of the medical profession is that so often the law as expressed in statutes, as well as in judicial decisions, are not responsive to the realities of medical science. It is interesting to note that while the body of Fla. Stat. § 797.01, F.S.A., condemns an attempt to procure a "miscarriage," the statute is captioned "performing abortion." Neither this statute nor others observe the medical distinction between abortion and miscarriage.
Assume that a pregnant woman informs her physician that if her pregnancy goes to term she will take her own life. Is an abortion necessary to preserve the life of that patient? The patient will not die from any physiological condition related to her pregnancy, and the patient may not, in fact, carry out her threat. Assuming that the physician has strong and valid reasons to believe that his patient will take her own life, does this statute tell him whether he can legally terminate the pregnancy?
This reasoning was also followed by a three-judge Federal court in evaluating a Texas statutory standard as to whether an abortion was attempted "for the purpose of saving the life of the mother." The Court said:
"How likely must death be? Must death be certain if the abortion is not performed? Is it enough that the woman could not undergo birth without an ascertainably higher possibility of death than would normally be the case? What if the woman threatened suicide if the abortion was not performed? How imminent must death be if the abortion is not performed? Is it sufficient if having the child will shorten the life of the woman by a number of years?" Roe v. Wade, D.C., 314 F. Supp. 1217, 1223.
Any statute dealing with abortions is heavily weighed with religious teachings and ethical concepts. The moral issues are important, but should not exclusively control the judiciary in determining the constitutionality of any statute relating to such a volatile subject. The statute as it is presently written licenses the jury to create its own standard in each case by either applying, or refusing to apply, the nebulous question of whether a certain act was necessary to preserve the life of the mother. As an end result, juries would condemn what they personally disapprove.
How imminent must the threat of death be to warrant an abortion "to preserve the life of the mother" in question? If permitting a pregnancy to go to term would clearly shorten the mother's life by a substantial number of years, would a physician be justified in performing an abortion in accordance with the term "necessary to preserve the life of such mother?" A study of Florida decisions and Florida statutes offers little guidance to the physician for the meaning of the language "necessary to preserve the life."
Protection of the mother from unsafe surgical procedures may well have been in the legislators' minds when they enacted the abortion statutes in 1868. Modern-day medicine, whoever, makes induced miscarriage in the first trimester of pregnancy a safer procedure than delivery at full term. See People v. Belous, 71 Cal.2d 954, 80 Cal. Rptr. 354, 360, 458 P.2d 194, 200. At the time of the adoption of the statutes, the State, to protect the interest of its citizens, could reasonably restrict the availability of abortion to those women who faced an equally serious risk of death if the operation were not performed.
*862 At that time the discipline of psychiatry was unknown in the medical profession. Today, it is recognized that mental illness is, at least, as great a threat to human well-being as is physical illness. Many factors can precipitate a permanent and incurable mental disorder, among them the strain of childbirth or the inability of the mother to cope with the responsibility of caring for an infant.
The continuance of the sole exception to the abortion statute of the necessity to save life is a refusal to recognize the advance of medical science in its understanding of the mind, and can no longer be considered as representing a reasonable classification. In effect, the statute says that a woman whose continued physical life is threatened by pregnancy may secure appropriate medical help, but that a woman whose sanity is equally threatened must be condemned to a continuing existence without the human attributes of intelligence and reason. Our society should not condone such a classification as reasonable.
Also, the Court should entertain serious reservations regarding the exclusion from the right to abortion of the victims of forcible rape or the minor who is pregnant as the result of an uninvited incestuous relationship. The better view is that the interest of such women in being relieved from the consequences of the violations of their body should, in a civilized society, be deemed superior to the interest of the unborn child conceived in violence or lust.
The duty and judgment of a physician, the necessity and welfare of the patient, and the rights of both, cannot be subjected to arbitrary and unreasonable legislative interference and infringement. A physician has the right and duty to practice his chosen profession to the best of his ability, which necessarily includes the discretion to perform those procedures which in his expert medical judgment, he deems to be in his patient's best interest.
A woman who seeks therapeutic abortion and a physician who concurs in such course of treatment, or who in the first instance recommends the same, should not be subject to a virtually absolute threat of criminal prosecution and punishment unless the State has a compelling interest in regulating such conduct.
Unless the statutory code of conduct is stable and in very narrow bounds, juries have a wide range and physicians have no reliable guidepost. The words "necessary to preserve the life of such mother" become free-wheeling concepts, too easily taking on meaning from the jurors predilections or religious prejudices.
Because of the erroneous instruction, the judgment of the trial court is reversed and the cause is remanded.
It is so ordered.
ROBERTS, C.J., CARLTON and BOYD, JJ., concur.
ERVIN, J., concurs specially with opinion.
DEKLE and DREW (Retired), JJ., concur in judgment.
ERVIN, Justice (specially concurring).
I concur in Justice Adkins' opinion. I would add a few comments, believing that eventually, if not at present, the Legislature will of necessity come to grips with the instant problem in the light of evolving concepts of liberty.
What I have to add relates to the liberty under law of women concerning the instant subject, including privacy, personal control over their bodies, their rights concerning termination of pregnancy, their rights vis-a-vis an unborn child, et cetera, and the extent to which liberties of women in these areas can be abridged by the states.
In his concurring opinion in Griswold v. Connecticut, 1965, 381 U.S. 479, 497, 85 S. *863 Ct. 1678, 1688, 14 L.Ed.2d 510, Mr. Justice Goldberg wrote:
"In a long series of cases this Court has held that where fundamental personal liberties are involved, they may not be abridged by the States simply on a showing that a regulatory statute has some rational relationship to the effectuation of a proper state purpose. `Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling,' Bates v. City of Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480. The law must be shown `necessary, and not merely rationally related, to the accomplishment of a permissible state policy.' McLaughlin v. State of Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 290, 13 L.Ed.2d 222. See Schneider v. State of New Jersey, Town of Irvington, 308 U.S. 147, 161, 60 S.Ct. 146, 151, 84 L.Ed. 155."
A woman's right to privacy from state intrusion in the personal control of her body is unquestionably a fundamental personal liberty, emanating from what the Griswold majority calls the penumbra of the specific guarantees of the Bill of Rights. To take away her right to total control of that body, including the elimination of parts of it, the State must show a strong compelling and necessary interest. None is shown in the language of F.S. Section 797.01, F.S.A. The statute does not indicate any expressed intent to protect the unborn child, the mother, or the public, or society in general.
There is no shown intent to protect an unborn child since the mother is not contemplated as one of the class of aborters, not being mentioned as one in the criminal statute. However, abortion attempts are ordinarily made at the instigation of women who are pregnant; certainly, when they seek and obtain abortions they are as guilty of killing embryos as those others who actually perform the act. But nowhere is there a provision, express or implied, for punishing women who abort themselves, either directly or indirectly.
As to the right of the unborn child to be born, I call attention to a decision of a Federal District Court which weighed the possible rights of the unborn child and the mother under a statute similar to ours and concluded:
"Upon a balancing of the relevant interest, we hold that a woman's right to refuse to carry an embryo during the early months of pregnancy may not be invaded by the state without a more compelling public necessity than is reflected in the statute in question." (Babbitz v. McCann, D.C., 310 F. Supp. 293 [1970])
There is also no strong state interest expressed in the statute for protecting the mother, since the statute outlaws abortions made at any time, not merely after the child is "quick." Medical studies show that "it is now safer for a woman to have a hospital therapeutic abortion during the first trimester than to bear a child." (People v. Belous, 1969, 80 Cal. Rptr. 354, at 360, 458 P.2d at 194, 200-201.) The statute, in point of reality, is protecting the health of women very little since notwithstanding the statute it is common knowledge they are obtaining abortions daily, often in filthy motel rooms at the mercy of quacks who are charging exorbitant fees.
The statute also does not show a compelling state interest in prohibiting premarital sexual intercourse (the prelude to unwed mothers) since it draws no distinction between married and unmarried women.
Turning now to another facet of the subject, I find F.S. Section 797.01, F.S.A. to be vague and indefinite in its use of the word "unlawfully." Criminal statutes should contain an ascertainable standard of guilt. Cline v. Frink Dairy Co., 1927, 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146: Broch v. Hardie, 114 Fla. 670, 154 So. 690, 694. Section 797.01 prohibits unlawful abortions but does not define the word, *864 "unlawfully." Doctors and laymen have no way of determining whether they are performing a statutorily prohibited abortion.
The vagueness of Section 797.01 cannot be corrected by reading Section 782.10 in pari materia. There is no indication in Section 797.01 that the clause in Section 782.10 reading "unless the same shall have been necessary to preserve the life of such mother" defines all types of "lawful" abortions contemplated by Section 797.01. Section 782.10 is concerned with the death of a mother or a child following the use of a drug or an instrument to induce an abortion in "any woman pregnant with a quick child." (Emphasis supplied.)
At common law there could be no abortion unless a woman were pregnant with a quick child. (State v. Steadman, 1948, 214 S.C. 1, 51 S.E.2d 91.) The mother is in this condition "when the embryo [has] advanced to that degree of maturity where the child had a separate and independent existence, and the woman has herself felt the child alive and quick within her." State v. Steadman, supra, at 93.
However, Section 797.01 condemns the procurement of any miscarriage regardless of whether the pregnant mother is quick with child. The age or development of the unborn child is immaterial insofar as violations of Section 797.01 are concerned.
A manslaughter conviction under Section 782.10 for the destruction of a fetus at this stage of development may be medically, morally, theologically and legally justified under certain well defined circumstances. A similar conviction for the death of the mother might be justified for similar defined reasons. Yet it would be grossly unjust to impose criminal sanctions on someone whose attempt, made in all good faith and in keeping with acceptable standards of medical practice, to abort a woman to save her life, resulted in the death of either the quick child or the mother. The "unless" clause in Section 782.10, therefore, is logically essential to that section. There is, however, neither an expressed nor logical reason for judicially bringing it over and incorporating it as if by way of legislative amendment into Section 797.01, which purports to condemn the procurement by another of any miscarriage in any pregnant woman.
Section 797.01 broadly prohibits attempted or successful procurement of miscarriages through the unlawful administration of medicine or use of instruments. The word "unlawful," used in this section is vague and ambiguous. There is no clue as to its meaning. It could merely forbid the use of stolen or unprescribed medicines or the use of surgical instruments by laymen posing as doctors. Such an interpretation is logical, in fact, since the word, "unlawfully," modifies "administers" and "uses."
There is nothing, therefore, to put the reader on notice that he must go to Section 782.10 to find a definition of "unlawfully." Such an omission is fatal in a criminal penal statute. Penal statutes must be explicit; they cannot be upheld if it is necessary to guess or search for possible meanings of essential words. However, Section 797.01 condemns the procurement of any miscarriage, regardless of whether the pregnant mother is quick with child. The age or development of the fetus is immaterial insofar as violations of Section 797.01 are concerned.
In sum, the statute intrudes into the area of personal liberty of women and does it crudely in vague, uncertain, archaic language.
ADKINS, J., concurs.