262 So.2d 431 (1972)
STATE of Florida, Appellant,
v.
Luis Bulas BARQUET et al., Appellees.
No. 41596.
Supreme Court of Florida.
February 14, 1972.
*433 Robert L. Shevin, Atty. Gen., and Raymond L. Marky, Asst. Atty. Gen., for appellant.
Marvin J. Emory, Jr., of Law Offices of Carr & Emory, Miami, for appellees.
Robert M. Brakes, Coral Gables, and Robert B. Kane, Tallahassee, as amici curiae.
ADKINS, Justice.
This is a direct appeal from the Criminal Court of Record of Dade County, Florida, which held that Fla. Stat. §§ 782.10 and 797.01, F.S.A., relating to abortions, were unconstitutional. We have jurisdiction. Fla. Const., art. V, § 4(2), F.S.A.
At the outset, we emphasized that the emotional and explosive question of whether an abortion should be prohibited or permitted is a matter entirely within the discretion of the legislative branch of government, subject only to constitutional limitations. Governmental powers are divided into the executive, legislative and judicial branches. The lawmaking function is the chief legislative power. This function involves the exercise of discretion as to the contents of a statute, its policy or what it shall be. See 4 F.L.P., Constitutional Law, § 33. The judicial branch is constitutionally forbidden from exercising any powers appertaining to the legislative branch (Fla. Const., art. II, § 3), and will not suggest a solution to this sensitive problem.
We are concerned only with the constitutionality of Fla. Stat. §§ 782.10 and 797.01, F.S.A. The validity of both statutes must be considered together in the present challenge since this Court is bound by the construction it placed upon Fla. Stat. § 797.01, F.S.A., in Carter v. State, 155 So.2d 787 (Fla. 1963). In Carter v. State, supra, we held that Fla. Stat. § 797.01, F.S.A., was able to withstand the constitutional challenge only if considered in pari materia with Fla. Stat. § 782.10, F.S.A. The Legislature's subsequent reenactment of Fla. Stat. § 797.01, F.S.A., affirmed this interpretation. See Walsingham v. State, 250 So.2d 857 (Fla. 1971). Therefore, these statutes must stand or fall together. They read as follows:
"782.10 Abortion.  Every person who shall administer to any woman pregnant with a quick child any medicine, drug or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall have been necessary to preserve the life of such mother, or shall have been advised by two physicians to be necessary for such purpose, shall, in case the death of such child or of such mother be thereby produced, be deemed guilty of manslaughter."
"797.01 Performing abortion; punishment.  Whoever with intent to procure miscarriage of any woman unlawfully administers to her, or advises or prescribes for her, or causes to be taken by her, any poison, drug, medicine or other noxious thing, or unlawfully uses any instrument or other means whatever with the like intent, or with like intent aids or assists therein, shall, if the woman does not die in consequence thereof, be punished by imprisonment in the state prison not exceeding seven years, or by fine not exceeding one thousand dollars."
If the statutes contained a clause reading "necessary to the preservation of the mother's life or health" instead of the clause "necessary to preserve the life," the statutes could be held constitutional (United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601), for a statute could constitutionally provide for an abortion if same is necessary for the preservation of the mother's health. See Walsingham v. State, supra.
*434 Appellees were charged, inter alia, with conspiring to commit abortions and performing abortions. The trial judge granted a motion to dismiss the information and held the above-quoted statutes to be unconstitutional, relying upon the reasoning in Walsingham v. State, supra.
Appellees advance two reasons why the statutes should be held unconstitutional:

First: Fla. Stat. § 797.01, F.S.A., is vague, and, therefore, violates the United States Constitution, Fourteenth Amendment;

Second: Fla. Stat. § 797.01, F.S.A., whether read in pari meteria with Fla. Stat. § 782.10, F.S.A., as required by Carter v. State, 155 So.2d 787 (Fla. 1963), or not, is an unreasonable invasion into a female's fundamental right to privacy, thereby violating substantive due process guaranteed by United States Constitution, Fourteenth Amendment.
If a statute in defining a criminal offense, omits certain necessary and essential provisions which serve to impress the acts committed as being wrongful and criminal, the courts are not at liberty to supply the deficiencies or undertake to make the statute definite and certain. See State ex rel. Lee v. Buchanan, 191 So.2d 33, text 36 (Fla. 1966). To do so would be to perform a lawmaking function in violation of Fla. Const. art. II, § 3. The public must be informed as to acts which are crimes by statute, rather than by judicial opinion.
As stated in Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849 (Fla. 1971):
"An act of the Legislature, to have the force and effect of a law, must be reasonably definite and certain. 82 C.J.S. Statutes § 68a. This is an essential element of due process of law. The constitutional requirement of definiteness is violated by an enactment that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held responsible for conduct which he could not reasonably understand to be proscribed. The vice of vagueness in statutes is the treachery they conceal in determining what persons are included or what acts are prohibited." (p. 854)
The Attorney General, disturbed by the opinion rendered in Walsingham v. State, supra, cites several cases holding that the clause, "unless the same shall have been necessary to preserve the life of such mother," does not make the statute vague. These authorities are: Rosen, M.D. v. Louisiana State Board of Medical Examiners, 318 F. Supp. 1217 (La.E.D. 1970); State v. Abodeely, 179 N.W.2d 347 (Iowa 1970); Steinberg v. Brown, 321 F. Supp. 741 (Ohio N.D. 1970).
On the other hand, the Appellees rely strongly upon the authorities discussed in Walsingham v. State, supra. These authorities are: People v. Belous, 71 Cal.2d 954, 80 Cal. Rptr. 354, 458 P.2d 194 (1969); Roe v. Wade, 314 F. Supp. 1217 (Tex.N.D. 1970).
In addition, Appellees refer to Doe v. Scott, 321 F. Supp. 1385 (Ill.N.D. 1971), where a three-judge panel speaking through the Chief Circuit Judge said:
"The question thus becomes whether men of ordinary intelligence must guess at the meaning of the words, `necessary for the preservation of the woman's life.'
"We note at the outset that these words, or substantially identical ones, have convinced some courts that they are incapable of certain interpretation, (E.g., Roe v. Wade, 314 F. Supp. 1217, 1223 (N.D.Tex. 1970); United States v. Vuitch, 305 F. Supp. 1032, 1034 (D.D.C. 1969); People v. Belous, 71 Cal.2d 954, 80 Cal. Rptr. 354, 458 P.2d 194, 197 (1969), cert. denied, 397 U.S. 915, 90 S.Ct. 920, 25 L.Ed.2d 96 (1970).) and other courts have disagreed. (E.g., Babbitz v. McCann, *435 310 F. Supp. 293, 298 (E.D.Wis. 1970); Rosen v. Louisiana State Board of Medical Examiners, 318 F. Supp. 1217, (E.D.La. 1970); Steinberg v. Rhodes [Brown], 321 F. Supp. 741 (N.D.Ohio, filed Dec. 18, 1970).) If courts cannot agree on what is the essential meaning of `necessary for the preservation of the woman's life' and like words, we fail to see how those who may be subject to the statute's proscriptions can know what it prohibits. On the issue of vagueness, we are in agreement with the reasoning of People v. Belous (71 Cal.2d 954, 80 Cal. Rptr. 354, 458 P.2d 194 (1969), cert. denied, 397 U.S. 915, 90 S.Ct. 920, 25 L.Ed.2d 96 (1970) and Roe v. Wade. (314 F. Supp. 1217 (N.D.Tex. 1970).) One need not inquire in great depth as to the meaning of such words as `necessary' and `preserve' to conclude that the holdings of those cases are correct. `Necessary' has been characterized as vague by the United States Supreme Court and has been similarly described by other courts. It is `a word susceptible of various meanings. It may import absolute physical necessity or inevitability, or it may import that which is only convenient, useful, appropriate, proper, or conducive to the end sought.'
"The word `preserve' is similarly susceptible of so broad a range of connotations as to render its meaning in the statute gravely amorphous, since it may mean anything from maintaining something in its status quo to preventing the total destruction of something. The treating physician who believes an abortion is medically or psychiatrically indicated thus finds himself threatened with becoming a felon as well as with the possibility of losing his right to practice his profession if he errs in the legal interpretation of a penal statute, the words of which have not been sufficiently definite for courts to agree on their meaning. This is precisely the kind of situation that the void-for-vagueness doctrine is intended to prevent." (pp. 1388-1389)
In our opinion, men of ordinary intelligence must guess at the meaning of the words, "necessary to preserve the life of such mother," and the statutes are so vague as to violate the United States Constitution, Fourteenth Amendment.
This Court is well aware of the pendency of various appeals before the United States Supreme Court concerning the identical question.
Although similar statutes may be held valid by the United States Supreme Court, it does not necessarily follow that they are valid under the state constitution. As stated in 20 Am.Jur.2d Courts, § 225, pp. 556-557:
"State courts are not bound to follow a decision of a federal court, even the United States Supreme Court, dealing with state law. Thus a state court is not bound to follow a decision of a federal court, even the United States Supreme Court, construing the constitution or a statute of that state. But a federal decision dealing with state law may have persuasive effect in the respective state jurisdiction. Accordingly, a federal court's construction of a state constitution may have persuasive effect on the courts of that state. And where a provision of the constitution of a state is similar to a provision of the Federal Constitution, although a state court is not, in construing the state provision, bound to follow the federal construction of the corresponding federal provision, it will follow the federal court decision if and to the extent it is persuasive. Similarly, where the federal and state statutes are similar and intended to accomplish like objects, state courts, in construing the state statute, although not bound to follow the construction put on the federal statute by federal courts, will be strongly inclined to follow the federal court construction, especially where the state statute was purposely modeled upon the corresponding federal statute."
*436 As further stated in 21 C.J.S. Courts § 205, pp. 362-364:
"[T]he state courts are free to decide for themselves all questions of the construction of state constitutions and statutes. An exception to this rule has been made, however, where the federal supreme court has decided that it is necessary to construe a state statute in a certain way to prevent its being violative of the federal constitution; and where the question presented is as to the construction or violation of a provision of the state constitution which is similar to a provision of the federal constitution, and the same question has been decided by the federal supreme court with respect to the federal constitution, the federal decision is strongly persuasive as authority, and is generally acquiesced in by the state courts, although it is not absolutely binding."
The outcome of the appeals presently pending before the United States Supreme Court will not affect our decision in this case that the statutes are violative of our State Constitution.
The Fla. Const., art. I, § 9, F.S.A., also contains a due process clause just as that contained in the United States Constitution, Fourteenth Amendment. We also hold that the statutes under attack are so vague as to do violence to this provision of the Florida Constitution, and are, therefore, unconstitutional.
We find ourselves in the same situation as in Franklin v. State, 257 So.2d 21 (opin. filed December 17, 1971), where we held unconstitutional, as being vague, Fla. Stat. § 800.01, F.S.A., penalizing "the abominable and detestable crime against nature." In that opinion, we said:
"The renewed attack on the language of this statute for constitutional vagueness and overbreadth is not surprising in view of the guarded wording used in such statutes in 1868 when it was drafted. A very serious question is raised as to whether the statute meets the recognized constitutional test that it inform the average person of common intelligence as to what is prohibited so that he need not speculate as to the statutory meaning. If the language does not meet this test, then it must fall and the matter must be left to legislative correction. This statute and others relating to a variety of sex offenses need immediate legislative review and action. We urgently commend this important area of great social concern for appropriate remedial legislation.

"We have over a long period of time upheld the statute despite earlier constitutional challenges. We are persuaded that these holdings and this statute require our reconsideration. One reason which makes this apparent is the transition of language over the span of the past 100 years of this law's existence. The change and upheaval of modern times are of drastic proportions. People's understandings of subjects, expressions and experiences are different than they were even a decade ago. The fact of these changes in the land must be taken into account and appraised. Their effect and the reasonable reaction and understanding of people today relate to statutory language." (emphasis supplied)
Chief Justice Roberts in Franklin v. State, supra, by a specially concurring opinion, discussed the authorities as follows:
"In the case of United States v. Armstrong, D.C., 265 F. 683, the court stated:
"`In general, a criminal statute, to be valid, must be so clearly and definitely expressed that an ordinary man can determine in advance whether his contemplated act is within or without the law, and, if deviation from a standard is prohibited, the standard must be definitely fixed.'
"In Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273, the *437 Supreme Court of the United States stated that:
"`A defendant has right to have available, through a sufficiently precise statute, information revealing the standard of criminality before commission of the alleged offense.'
"In Raley v. Ohio, 360 U.S. 423, 438, 79 S.Ct. 1257, 1266, 3 L.Ed.2d 1344, the court again stated:
"`A State may not issue commands to its citizens, under criminal sanctions, in language so vague and undefined as to afford no fair warning or what conduct might transgress them.'
"The Supreme Court of Florida has been faced with the question of vagueness and unconstitutionality of penal statutes in several cases. One such case is Locklin v. Pridgeon, found at 158 Fla. 737, 30 So.2d 102 (1947). In that case the Supreme Court of Florida recognized that a penal statute must be definite to be valid. As the Court stated:
"`It appears to be generally conceded that a statute, especially a penal statute must be definite to be valid. In 12 Am.Jur., Constitutional Law, page 282, Sec. 585, it is said:
"`"A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."'"
It is unnecessary to pass upon the second question relating to invasion of a female's right to privacy.
Our conclusion creates a tremendous problem in that the common law is now brought into play. It was a crime at common law to operate upon a pregnant woman for the purpose of procuring an abortion if she were actually quick with child. 1 F.L.P., Abortion, § 2, citing Eggart v. State, 40 Fla. 527, 25 So. 144 (1898); 1 Am.Jur.2d, Abortion, § 1. "Quick" means "living; alive." Black's Law Dictionary, (4th Ed. 1957).
From the filing of this opinion until a statute is enacted by the Legislature, a person may be charged with the common law offense of abortion. This alleviates the possibility of this state becoming an abortion mill. We express no opinion concerning the religious or ethical concepts of an abortion, as we are confronted solely with the validity of the statutes involved.
The decision of this Court in Stokes v. Liberty Mutual Insurance Company, 213 So.2d 695 (Fla. 1968), holding that a stillborn fetus is not a "minor child" within Fla. Stat. § 768.03, F.S.A., allowing recovery for the wrongful death of a minor child was based primarily upon the particular language of the statute under consideration in the light of its historical background. The Court in its opinion distinguished the abortion statute. See 213 So.2d 695, Text 700.
Amicus curiae has filed an exhaustive brief concerning the rights of the life that may be destroyed in an abortion and asserts that in every abortion an embryo or fetus is destroyed. These are matters to be considered by the legislative branch of government in determining the myriad of questions involved in this volatile subject of such great public interest. We recognized the awesome responsibility placed upon the Legislature in Walsingham v. State, supra, when we said:
"Any statute dealing with abortions is heavily weighed with religious teachings and ethical concepts. The moral issues are important, but should not exclusively control the judiciary in determining the constitutionality of any statute relating to such a volatile subject." (250 So.2d p. 861)
The conduct proscribed by the abortion statute was a crime at common law. When the statute was enacted it was *438 expected that people would make their behavior conform to its provisions. The rights of those previously convicted have been finally determined. Although a person convicted under a law subsequently declared unconstitutional in some instances would be entitled to be heard, we hold that this decision and judgment invalidating the abortion statutes under consideration is not retroactive, but prospective only. The United States Supreme Court has found no constitutional limitation on state courts proceeding in this manner. See Grimes v. State, 244 So.2d 130 (Fla. 1971). In fact, federal courts have proceeded similarly. See Johnson v. N.J., 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Warring v. Colpoys, 74 App.D.C. 303, 122 F.2d 642, 136 A.L.R. 1025 (1941), cited in 20 Am.Jur.2d, Courts, § 236. The holding in this decision is available to those defendants who have not yet been adjudged guilty of a violation of either of these statutes involved in the case sub judice, as well as those who have sought timely review by appeal from an adjudication of guilt, as of the filing date of this opinion.
In summary, we hold that Fla. Stat. §§ 782.10 and 797.01, F.S.A., are violative of both the United States Constitution, Fourteenth Amendment, and the Fla. Const., art. I, § 9, F.S.A., in that such statutes are vague, indefinite and uncertain. The clause "unless the same shall have been necessary to preserve the life of such mother" is incapable of certain interpretation. The duty and judgment of a physician, the necessity and welfare of the patient, and the rights of both, cannot be subjected to indefinite, uncertain, vague, or unreasonable legislation. As discussed in Walsingham v. State, supra, the statutes are not so clearly and definitely expressed that an ordinary person can determine in advance whether his contemplated act is within or without the law, and the language used in the statutes considered herein is so vague and indefinite as to afford no fair warning as to what conduct might transgress them.
This decision does not have the effect of legalizing abortions, as that is a matter solely for the legislative branch of government. Abortions must now be punished as a common law offense as provided in Fla. Stat. § 775.02, F.S.A., which is hardly adequate under present day standards to properly protect society. Those who have been previously convicted receive no comfort, for, as discussed above, this opinion is prospective only. We urgently commend this important area of great social concern for appropriate remedial legislation.
The Legislature of Florida is presently in session and this question should be finally determined by that body. The welfare of the State requires that the issuance of the mandate in this case be withheld until the Legislature has an opportunity to solve the problem.
The judgment of the trial court is affirmed and the time for filing a petition for rehearing is extended for a period of sixty (60) days from this date, during which time the mandate of this Court is withheld.
It is so ordered.
ROBERTS, C.J., and CARLTON, McCAIN and DEKLE, JJ., concur.
ERVIN, J., concurs specially with opinion.
BOYD, J., dissents with opinion.
ERVIN, Justice (concurring specially).
I concur in the majority opinion and judgment invalidating the abortion statutes for the reasons assigned therein and also for the reasons expressed in my concurring opinion in Walsingham v. State, 250 So.2d 857 (Fla. 1971).
*439 BOYD, Justice (dissenting):
I respectfully dissent. Florida Statutes § 782.10[1] and § 797.01[2] have been part of the law of this State since 1868. On numerous occasions convictions under the statutes have been upheld.[3] The language "necessary to preserve the life of such mother", which the majority now finds unconstitutionally vague, is part of the abortion laws of many states[4] and was also employed at common law.[5]
Recently, the United States Supreme Court in the case of United States v. Vuitch,[6] decided April 21, 1971, held that the District of Columbia abortion statute[7] containing the language, "necessary for the preservation of the mother's life or health," was not unconstitutionally vague. In so doing, the Supreme Court reversed the lower court's holding that the phrase was unconstitutionally vague.[8] In Vuitch the Supreme Court also held that the burden of proof was on the State to show that the abortion was not necessary to preserve the mother's life or health.[9] This is the recognized rule[10] and is applicable to Florida abortion law.
In Rosen v. Louisiana State Board of Medical Examiners[11] a three-judge federal court held that a Louisiana statute was not vague which proscribed abortions, "unless done for the relief of the woman whose life appears in peril." In Corkey v. Edwards[12] North Carolina abortion laws containing the phrase "threaten the life or gravely impair the health" were upheld. In Steinberg v. Brown,[13] the Ohio abortion statute, in effect since 1834, was upheld against charges of vagueness and invasion of the rights of privacy. The Ohio statute is very similar to Florida Statute § 782.10 and contains the language "necessary to *440 preserve her life."[14] In upholding the Ohio statute, the Court held:[15]
"The words of the Ohio statute, taken in their ordinary meaning, have over a long period of years proved entirely adequate to inform the public, including both lay and professional people, of what is forbidden. The problem of the plaintiffs is not that they do not understand, but that basically they do not accept, its proscription."
The majority in the instant case refuses to be swayed by extensive authorities from federal courts, stating:[16]
"Although similar statutes may be held valid by the United States Supreme Court, it does not necessarily follow that they are valid under the state Constitution."
Wherein does the due process clause of the Florida Constitution, Article I, § 9, differ on the subject of vagueness from the due process clause of the United States Constitution under which statutes, such as Florida's abortion statutes, have been repeatedly upheld?
In Carter v. State,[17] this Court upheld the constitutionality of Florida Statute § 797.01. The same statute is now found to be unconstitutional. In addition, the opinion of the majority holds unconstitutional Florida Statute § 782.10, although none of the appellees were charged with violation of that statute.
The social desirability of legislation is the concern of the Legislature. The judiciary is not empowered to repeal statutes. No-fault divorce and no-fault insurance laws have been enacted by the Legislature in response to public demand. To the extent that no-fault abortion laws may be needed, it is the province of the Legislature, and not the Court, to supply that need.
The majority strikes Florida's abortion laws for vagueness and says persons may now be charged with the common-law offense of abortion. Common-law abortion has been defined as procuring the miscarriage of a woman quick with child.[18] The question remains as to where the man on the street or medical doctor will look to be advised as to what constitutes common-law abortion. There are no statutory guidelines or modern cases defining the common-law offense. However, common law did recognize the same exception, to-wit: necessary to preserve the life of the mother, which the majority finds too vague in its statutory form.[19] We are left with a law more vague and antiquated than the statutes stricken.
I am aware of the religious, moral and social issues involved. These questions are for the Legislature. My consideration here is limited to the constitutionality of the statutes involved.
I must respectfully dissent from the majority view.
NOTES
[1] Laws of 1868, c. 1637, subc. 3, § 11 (1868).
[2] Laws of 1868, c. 1637, subc. 8, § 9 (1868).
[3] See, e.g., Carter v. State, Fla., 155 So.2d 787 (1963), appeal dismissed, 376 U.S. 648, 84 S.Ct. 983, 11 L.Ed.2d 980 (1967); Weightnovel v. State, 46 Fla. 1, 35 So. 856 (1904); Eggart v. State, 40 Fla. 527, 25 So. 144 (1899); Urga v. State, 155 Fla. 86, 20 So.2d 685 (1945); Graham v. State, 153 Fla. 807, 16 So.2d 59 (1944); Sinnefia v. State, 100 So.2d 837 (Fla.App.3rd 1958); Nations v. State, 145 So.2d 259 (Fla.App.2d 1962); Urga v. State, 155 So.2d 719 (Fla.App.2d 1963); Pessolano v. State, 166 So.2d 706 (Fla.App.3rd 1964).
[4] 1 Am.Jur.2d Abortion, § 9 (1962), 153 A.L.R. 1218, 1266 (1944).
[5] Clark & Marshall, Crimes, p. 775 (7th Ed. 1967): "It is not a common-law offense to procure an abortion if it is necessary, or reasonably believed to be necessary, to save the life of the female. This is generally expressly provided in the statutes punishing abortion. If such an exception is not expressly stated, it may be implied, for the statute must be read in the light of the common law."
[6] 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971).
[7] D.C. Code Ann. § 22-201:

"Whoever, by means of any instrument, medicine, drug or other means whatever, procures or produces, or attempts to procure or produce an abortion or miscarriage on any woman, unless the same were done as necessary for the preservation of the mother's life or health and under the direction of a competent licensed practitioner of medicine, shall be imprisoned in the penitentiary not less than one year or not more than ten years... ." (e.s.)
[8] United States v. Vuitch, 305 F. Supp. 1032 (D.C. 1969).
[9] 402 U.S. 62, 70, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971).
[10] 1 Am.Jur.2d, Abortion, § 9 (1962).
[11] 318 F. Supp. 1217 (E.D.La. 1970).
[12] 322 F. Supp. 1248 (W.D.N.C. 1971).
[13] 321 F. Supp. 741 (N.D.Ohio 1970).
[14] Ohio Rev.Code § 2901.16:

"No person shall prescribe or administer a medicine, drug, or substance, or use an instrument or other means with intent to procure the miscarriage of a woman, unless such miscarriage is necessary to preserve her life, or is advised by two physicians to be necessary for that purpose."
[15] Steinberg v. Brown, D.C., 321 F. Supp. 741, 745 (1970).
[16] Opinion of majority, p. 435.
[17] 155 So.2d 787 (Fla. 1963), appeal dismissed, 376 U.S. 648, 84 S.Ct. 983, 11 L.Ed.2d 980 (1964).
[18] Eggart v. State, 40 Fla. 527, 25 So. 144, 145 (1898).
[19] Clark & Marshall, supra, note 5; People v. Belous, 71 Cal.2d 954, 80 Cal. Rptr. 354, 458 P.2d 194, 207 (1969).