336 So.2d 1163 (1976)
The DELTONA CORPORATION, Appellant,
v.
James BAILEY, Tax Assessor and Director of Tax Assessments, et al., Appellees.
No. 49053.
Supreme Court of Florida.
August 25, 1976.
Rehearing Denied October 7, 1976.
*1164 William L. Earl, of Peeples, Earl & Blank, Miami, for appellant.
William M. Barr, of Raymond, Wilson, Conway, Barr & Burrows, Daytona Beach, Robert L. Shevin, Atty. Gen., and Larry Levy, Asst. Atty. Gen., for appellees.
SUNDBERG, Justice.
This is an appeal from the dismissal for failure to state a cause of action of an amended complaint seeking ad valorem real property tax relief and, also, from earlier orders relating to discovery. We have jurisdiction pursuant to Article V, Section 3(b)(1), Constitution of Florida, in that the trial court initially and directly passed upon the validity of Section 195.062, Florida Statutes (1973) (the "Rose law"). The trial court found the designated statute to be violative of both the 1968 Florida Constitution and the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution.
Appellant Deltona filed its original complaint on December 5, 1974. Deltona alleged that the tax assessor failed to apply the Rose law and thereby violated its rights under that law, and that the company was denied due process and equal protection in its 1974 tax assessments and subsequent administrative reviews. The circuit court dismissed all counts of the original complaint with leave to amend.
Count I of the amended complaint was predicated on the Rose law. The lower court dismissed Count I because the Rose law violated the 1968 Florida Constitution and both the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution. The trial court held that the language in Interlachen Lake Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973), which stated that the decision *1165 would be applied prospectively meant that past transactions in justified reliance on the law would not be disturbed if the result would be an unreasonable hardship on a party acting in good faith. The lower court held that no such justified reliance exists in the instant case.
Count II of the amended complaint was dismissed with further leave to amend; absent such amendment, dismissal was to be with prejudice. The lower court noted that a cause of action for denial of equal protection could be alleged pursuant to Dade County v. Salter, 194 So.2d 587 (Fla. 1957), and Southern Bell Tel. & Tel. Co. v. County of Dade, 275 So.2d 4 (Fla. 1973), but held that Deltona had failed to frame its pleadings in conformity with those cases.
Count III of the amended complaint was dismissed in the same manner as Count II. The court held that the pleadings were insufficient in that Deltona failed to allege ultimate facts showing the manner in which it notices from the Assessor were "faulty, incomplete and inaccurate." The court noted that although Deltona alleged that it was "unable to present evidence, confront witnesses or be heard," Deltona did not allege that those rights were actually denied by the Board and, in fact, from the allegations of the amended complaint it appears that not only did Deltona petition the Board of Tax Adjustment for an administrative review and hearing on its assessment, but that such a hearing and review took place, after which the Board denied relief.
Concerning the discovery issue, Deltona propounded twenty interrogatories to the appellee Tax Assessor in January, 1975. On March 24, 1975, the trial court granted the Tax Assessor's motion for a protective order against answering such interrogatories on the premise that it would be oppressive and burdensome for the Tax Assessor to respond prior to determination of pending motions to dismiss the complaint. After the original complaint was dismissed in an order dated June 18, 1975, Deltona moved on July 30, 1975, to compel answers to its initial interrogatories. This motion was denied by the trial court's order dated October 30, 1975.
Deltona declined to further amend Counts II and III of its complaint within the time limited by the trial court and filed a notice of appeal to the First District Court of Appeal. On appellees' motion the appeal was transferred to this Court pursuant to Rule 2.1a(5)(d), Florida Appellate Rules.
On this appeal Deltona raises five issues, which are: (i) whether the Rose law is applicable for the 1974 tax year; (ii) whether the amended complaint stated a cause of action under the Rose law; (iii) whether the amended complaint stated a cause of action for denial of equal protection; (iv) whether the amended complaint stated a cause of action for denial of due process; and (v) whether the lower court improperly prohibited discovery against the defendants/appellees.
Determination of the first issue turns on an interpretation of the last paragraph of this Court's original decision in Interlachen Lake Estates, Inc. v. Snyder, supra, which reads:
"This decision operates prospectively from the date the opinion becomes final because persons relying on the state statute did so assuming it to be valid despite the new provisions of the 1968 State Constitution. Compare Gulesian v. Dade County School Board, Fla., 281 So.2d 325, opinion filed July 31, 1973, and City of Naples v. Conboy [Fla.], 182 So.2d 412 at 417 et seq." (emphasis supplied)
In its decision filed September 12, 1973, the Court, in responding to questions certified from the circuit court, held that Section 195.062(1), Florida Statutes (1971),[*] violated the constitutional provision requiring just valuation of all property for ad valorem taxation. After considering a petition for rehearing filed by plaintiffs and hearing *1166 oral argument on the petition, this Court adhered to the opinion filed on September 12, 1973. In the instant case the trial court concluded that this Court was without power to give its decision in Interlachen prospective effect, for to do so would be an unauthorized attempt to breathe retroactive life into an organically dead law. The court bottomed its ruling upon the decision of this Court in State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739 (Fla. 1924), wherein it was stated at page 745:
"The courts have no power to make a statute inoperative only from the date of an adjudicated invalidity, because the courts merely adjudge that a statute conflicts with organic law, and the Constitution then operates to make the statute void from its enactment, the courts having no power to control the operation of the Constitution."
The trial court dismissed as distinguishable the authorities asserted by Deltona to authorize prospective invalidity by concluding that they dealt with equitable considerations of hardship where the parties had relied to their detriment on putatively valid legislation. The trial court reached its conclusion by reference to the two cases cited by Justice Ervin to support the prospective application of invalidity of the Rose law. It construed the implication of the prospective language of the Interlachen Lake Estates decision to mean only that past transactions were not to be disturbed when to do so would create an unreasonable hardship on a party acting in good faith. The court further found no such reliance on the part of Deltona in the instant case. Appellees in this Court similarly maintain that the Gulesian and Conboy cases cited by Justice Ervin make clear that the prospective language in Interlachen Lake Estates precludes only the necessity of undoing past completed transactions and was only to be applicable to instances of extreme hardship. They assert that these cases are bottomed on a doctrine in the nature of equitable estoppel.
There are two problems with the trial court's ruling and the position asserted by the appellees. First, an act of the Legislature is presumed constitutional until invalidated by a final appellate decision. In re Estate of Caldwell, 247 So.2d 1 (Fla. 1971); State ex rel. Atlantic Coast Line R.R. v. Board of Equalizers, 84 Fla. 592, 94 So. 681 (1922). Likewise, courts have on various occasions, contrary to the doctrine expressed in Nuveen, supra, applied the principle of prospective constitutional invalidity. See, e.g., City of Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) (state statutory and constitutional provisions restricting franchise in general obligation bond elections to property holders); Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (state statute limiting franchise to "property taxpayers" in elections called to approve issuance of revenue bonds by municipal utility); State v. Barquet, 262 So.2d 431 (Fla. 1972) (abortion statute); Franklin v. State, 257 So.2d 21 (Fla. 1971) ("abominable and detestable crime against nature" statute). Second, the Interlachen Lake Estates decision stated in unequivocal language that it was to operate prospectively "from the date the opinion becomes final." Clearly the opinion was not final until the order on petition for rehearing was filed on December 9, 1974. See Kippy Corp. v. Colburn, 177 So.2d 193, 195 (Fla. 1965); State ex rel. Owens v. Pearson, 156 So.2d 4, 7 (Fla. 1963). To the argument, based on Gulesian and Conboy, supra, that the Interlachen Lake Estates decision was limited to the facts and particular hardship involved in that case only, we respond that such an argument is refuted by a plain reading of the decision. The case came to the Court on certified questions pursuant to Florida Appellate Rule 4.6 without any discussion in the opinion of any peculiar factual situations. In addition, Justice Ervin stated that the decision was to operate prospectively "because persons relying on the state statute did so assuming it to be valid despite the new provisions of the 1968 State Constitution." (emphasis supplied) Use of *1167 the word "persons" makes clear that the decision was not limited to the taxpayers involved in that particular case. Accordingly, we conclude that the trial court erred in holding that taxpayers were not entitled to the benefit of Section 195.062, Florida Statutes (1973), for the tax year 1974. Ad valorem real property taxes for that year became a lien on January 1, 1974. The Interlachen Lake Estates case did not become final and operative, by its express terms, until December 9, 1974.
The adequacy of the amended complaint to state a cause of action under Section 195.062, Florida Statutes (1973), must be assessed in light of that portion of the statute which reads:
"... [the tax assessor's manual of instructions] shall provide that platted lands unsold as lots shall be valued for tax assessment purposes on the same basis as any unplatted acreage of similar character until 60 percent of such lands included in one plat shall have been sold as individual lots." (emphasis supplied)
Although we do not accept appellees' assertion that the plats in question were not sufficiently identified in the amended complaint and Exhibit A attached thereto, we concur that the allegations of Count I were defective in alleging only that Deltona owns record title and "had not sold as lots, or otherwise conveyed more than 60% of the platted lots within each of the plat units at issue." From the amended complaint it appears that each of the units referred to is an individual plat; however, Deltona must plead and prove that 60% of the lands included in each plat have not been sold as individual lots, not 60% of the lots. Accordingly, the trial court properly ordered Count I of the amended complaint dismissed for failure to state a cause of action under the Rose law. However, due to its (erroneous) substantive ruling upon the applicability of the statute for the year 1974, we conclude that the first count of the amended complaint should not have been dismissed with prejudice, and Deltona should be granted leave to amend Count I further so as to properly plead a cause of action under the Rose law if the facts permit.
As to the equal protection issue raised by Count II of the amended complaint, we agree with the appellees that the allegations were insufficient to state a cause of action. It is fundamental that property in Florida is legally required to be assessed at 100% of its actual fair market value and a court may not reduce a taxpayer's assessment below 100% on a mere showing that parcels of some other taxpayers are assessed at a lesser amount. See Walter v. Schuler, 176 So.2d 81 (Fla. 1965); Cosen Investment Co. v. Overstreet, 154 Fla. 416, 17 So.2d 788 (1944); Sproul v. Royal Palm Yacht & Country Club, Inc., 143 So.2d 900 (2d D.C.A.Fla. 1962). It is only in very limited circumstances in which an exception to the general rule can be successfully maintained. Normally one whose property is not assessed at greater than 100% of its fair market value may not be permitted to complain even though other and even similar properties are assessed at less than 100%. The exception to this rule is represented by the cases of Dade County v. Salter, 194 So.2d 587 (Fla. 1967), and Southern Bell Tel. & Tel. Co. v. County of Dade, 275 So.2d 4 (Fla. 1973). In Salter, the court had under consideration a complaint that alleged that the tax assessor had failed to follow the provision of Section 193.11, Florida Statutes (1961), calling for assessment at full cash value, in that he had arbitrarily and discriminatorily assessed plaintiffs' property at a higher cash value than similar property in Dade County, Florida, and at a higher cash value relatively and comparatively to all other property in Dade County, Florida, so that the resultant assessment to the plaintiffs constituted an unfair tax burden. On rehearing the Court observed the distinction between the case before it and Cosen, supra:
"... In Cosen Investment Company, Inc. v. Overstreet, 154 Fla. 416, 17 So.2d 788 (relied upon so heavily in the opinion), there was no allegation that all *1168 of the property of the county was assessed at less than its full cash value. The allegation there was that similar property was assessed at less value than plaintiff's property." (emphasis supplied)
The allegations of the complaint asserted that the assessor had systematically assessed on a basis aimed at valuing all property in Dade County at 47.27% of its full cash value, whereas the plaintiffs' assessment was at a sum in excess of 87% of its full cash value for the year in question. The Southern Bell case, supra, applied the rationale of Salter to a factual situation in which it was admitted that the plaintiff's tangible personal property was assessed at 100% of full cash value, whereas studies introduced by the plaintiff reflected that all real properties in the same county were assessed at a median ratio ranging from a low of 81.37% to a high of 83.2%. The Court then recognized, as in Salter, that the constitutional rights of a taxpayer are infringed if his property is assessed at a percentage of value substantially higher than the percentage at which all other property in the county is generally assessed even though his assessment is not above fair market value.
It is against the foregoing principles that Deltona's allegation concerning equal protection must be measured. The gravamen of its action is found in paragraph 21 of the amended complaint:
"Defendant Tax Assessor's reassessment of Plaintiff's property and systematic underassessment of other property on a county-wide basis resulted in Plaintiff's property being assessed in a manner contrary to law at a value higher than its lawful value and at a level higher than the general level of assessment for similar properties in Volusia County, Florida, thereby requiring Plaintiff to bear a disproportionate and unequal share of the Volusia County tax burden and thereby violating Plaintiff's right to equal protection under the United States Constitution." (emphasis supplied)
Although the quoted allegations appear to contain the elements required by Salter and Southern Bell Tel. & Tel. Co., supra, a reading of Count II in its entirety indicates that an essential element is missing. Deltona fails to allege that all (or even substantially all) other property in the county is systematically assessed at a value less than the assessment of Deltona's property. When speaking of the general level of assessments in the county the amended complaint avers that Deltona's property is assessed at a level higher than the general level of assessment for similar properties in Volusia County, Florida. Since Deltona failed to plead that it is being "singled out" and specifically discriminated against vis-a-vis the other taxpayers generally in Volusia County, it has no standing to challenge its assessment on equal protection grounds, for that is the essential ingredient in Salter and Southern Bell.
Count III of the amended complaint, alleging denial of due process because of insufficient notice, is self-destructive. It affirmatively appears from the allegations of the amended complaint that:
1. In June, 1974, Deltona received notices of increased assessments on more than 8,000 tax parcels.
2. Deltona thereafter filed a timely petition for administrative review of its increased assessments.
3. Deltona received a notice of hearing on its petition.
4. In late July, Deltona received a computer printout showing its 1974 assessments.
5. Deltona's petition was heard and denied by the Board of Tax Adjustment.
The conclusion to be drawn from the allegations is that the notice the company received was sufficient to permit it to file a "timely written petition for administrative review" and that it in fact had that review before the Board of Tax Adjustment. See State ex rel. Munch v. Davis, 143 Fla. 236, 196 So. 491 (1940). There is no assertion by Deltona that the notices received and hearing date established before the Board of Tax Adjustment failed to comply with the *1169 statutory requirements for such notice and review. The statutory time periods have withstood due process challenge on a number of occasions. See Rudisill v. City of Tampa, 151 Fla. 284, 9 So.2d 380 (1942); Dade County v. Dupont Plaza, Inc., 117 So.2d 849 (3d D.C.A.Fla.), rev'd on other grounds, 125 So.2d 564 (Fla. 1960). Deltona's complaint actually seems to be grounded on the fact that the quantity of real estate owned by the company made it difficult to gain a proper review within the time frame established by the statute. The proper functioning of the tax collection system throughout the state requires that certain deadlines be observed. The fact that such deadlines work a hardship in situations where numerous parcels of property are concerned is not a basis for successfully asserting a denial of due process. As pointed out by the trial court in its order dismissing the amended complaint, the allegation respecting the quality of the hearing before the Board of Tax Adjustment was that "plaintiff was unable to present evidence, confront witnesses or be heard." It was not alleged that Deltona was actually denied these rights by the Board. The trial court was not in error in dismissing Count III.
We are left then with the issue of whether the trial court improperly prohibited discovery requested by Deltona. In view of the fact that this cause will be remanded to the trial court to permit further pleading by Deltona, this question is of importance for guidance of counsel and the court in this proceeding. After previously granting the Tax Assessor's motion for protective order, the trial court in denying Deltona's motion to compel answer relied upon the holding of this Court in Hollywood, Inc. v. Broward County, 90 So.2d 47 (Fla. 1956). In that case it was stated:
"[T]he order preventing the depositions was within the discretion of the Court... . The depositions were noticed while motions to dismiss were pending. The granting of those motions and dismissal of the cause, within a few days after the ruling on the depositions, rendered that question unsubstantial if not moot." (emphasis supplied) Id. at 47-48.
In the case at bar Deltona was effectively precluded from pursuing its discovery for substantially twelve months. In his initial motion for a protective order, the Tax Assessor raised a number of grounds which were, essentially, that the interrogatories were burdensome and oppressive, that they were not designed to limit the issues in the suit, that they would require the appellee to compile information, that they inquired into the applicability of the Rose law before a proper complaint for relief had been framed, and that the operations and functions of the Tax Assessor's office would be substantially prejudiced and damaged if he were required to respond to the interrogatories prior to disposition of the motions addressed to the complaint. In response to the motion, the court entered its order temporarily granting relief, pending determination of the motions addressed to Deltona's complaint. There was apparently no attempt to consider the interrogatories individually to determine whether some, if not all, should have been answered. Rule 1.280(c), Florida Rules of Civil Procedure, provides in part:
"Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense that justice requires ..." (emphasis supplied)
While postponing discovery for a short period of time pending determination of material, outstanding motions may be within the discretion of the trial court under the rationale of Hollywood, supra, the pendency of such unresolved motions is not sufficient "good cause shown" within the purview of Rule 1.280(c) to justify postponing discovery for the protracted period of time which elapsed in the case at bar. We believe an accurate construction of this rule is contained in the following quotation from Orlando *1170 Sports Stadium, Inc. v. Sentinel Star Co., 316 So.2d 607, 610 (4th D.C.A.Fla. 1975):
"This court has in the past stated that the trial court has the authority to regulate as well as to prevent the taking of depositions, but when this authority is exercised it should be only upon a showing of good cause. The only Florida reference we find to the trial court's discretion in preventing the taking of depositions which were noticed while a motion to dismiss was pending is in Hollywood, Inc. v. Broward County (Fla. 1956), 90 So.2d 47 which we deem inconclusive. Since our Rules of Civil Procedure are patterned very closely after the Federal rules, and it has been the practice of the Florida courts closely to examine and analyze the Federal decisions and commentaries under the Federal rules in interpreting ours we turn, in the absence of a Federal decision on point, to Moore's Federal Practice, 2nd Edition, pgs. 493-495 and cite the test therein:
"`In view of the general philosophy of full discovery of relevant facts and the broad statement of scope in Rule 26, and in view of the power of the court under Rule 26(c) and 30(d) to control the details of time, place, scope and financing for the protection of the deponents and parties, it is fairly rare that it will be ordered that a deposition not be taken at all. All motions under these subparagraphs of the rule must be supported by "good cause" and a strong showing is required before a party will be denied entirely the right to take a deposition.'" (footnotes omitted)
Consequently, upon remand the trial court should consider individually each of the interrogatories propounded to the appellees and make such order only as is necessary to protect the appellees from oppression, undue burden, or expense, where good cause is shown.
The order here under review is affirmed in part and reversed in part and the cause is remanded to the trial court for further proceedings not inconsistent with the views expressed herein.
OVERTON, C.J., and ROBERTS and HATCHETT, JJ., concur.
BOYD, J., dissents.
NOTES
[*] In the 1973 Florida Statutes, the "Rose law" appears simply as section 195.062, the second subsection having been excised from the statute by intervening legislative action.