HARRIS, Judge.
M.W. Ozier received his 1988 tax assessment for his home in the Marvania subdivision in Seminole County showing a value of $92,080.00. He then obtained computer printouts from the assessor’s office of other properties in his neighborhood which he considered comparable. His review of the tax assessor’s records convinced Ozier that the methodology used by the tax assessor caused a systematic undervaluation of a substantial number of homes in Seminole County causing unequal protection to him (and others) in the payment of ad valorem taxes in Seminole County.
Ozier appealed to the Property Appraisal Adjustment Board and his assessment was reduced.by $3,000. Dissatisfied with this result, Ozier filed this action in circuit court. In his petition, Ozier claims that similarly located, comparable homes [1] (he lists eight of them in his petition) are assessed at a fraction — one as low as one third — of his assessment. The tax assessor, as he must, admits the discrepancy but justifies the difference because of the age difference in the homes and his methodology in treating the age difference (which he contends is a generally accepted method of assessment).
The tax assessor moved for summary judgment on two grounds: (1) Ozier lacks standing under Deltona v. Bailey, 336 So.2d 1163 (Fla.1976), and (2) because the houses relied on by Ozier were substantially older, the methodology used by the assessor was appropriate and the difference in value was justified.
The court granted summary judgment holding that the differences complained of by the plaintiff were based on differing features of the property which provided a rational basis for the different assessments..
In effect, the trial court agreed with the tax assessor that the properties relied on by Ozier were, in fact, not comparable. Since it cannot be said that age alone, as a matter of law, prevents comparability as it relates to market value, the issue of whether the properties are comparable for tax assessment purposes is to be decided by the jury. We reverse the summary judgment.
Although the trial court did not accept the standing issue raised by the assessor, it was raised on appeal and we will discuss it first. The assessor urges:
The Florida Supreme Court held in Deltona v. Bailey, 336 So.2d 1163 (Fla.1976) that a taxpayer must plead and prove that he has been treated differently than all or substantially all other taxpayers in a similar class in the county or he has no standing to challenge his assessment under constitutional grounds. On the face of this pleadings, appellant has failed to plead a special injury.
The assessor urges that our supreme court requires that a taxpayer allege that *359 he is treated differently from all or substantially all of the other taxpayers in his class before he can complain. He asserts that merely alleging unfair treatment as compared with some other taxpayers is inadequate to justify a complaint. Ozier claims that he (and by inference the owners of all new homes in the county) is treated differently from the owner of older homes (of comparable market value) because of the methodology used to assess older homes. While he has not made an analysis of the entire county, he has presented the assessments of a substantial number of homes in his area to show that the alleged undervaluation effects a substantial number but not all or substantially all of the other homes.
We believe the assessor is reading Deltona v. Bailey too narrowly. Even if we were to interpret this case as the assessor does, such holding must give way to Allegheny Pittsburgh Coal Co. v. County Commissioner, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d. 688 (1989):
Intentional systematic undervaluation by state officials of other taxable property in the same class contravenes the constitutional right of one taxed upon the full value of his property. [Emphasis added.]
We find Ozier has standing to challenge the methodology used by the assessor.
There does appear to be a problem in the assessor’s methodology and we ask the trial court to examine more fully on remand how the methodology employed by the assessor determined that the full value of the Demster property was $54,650.00 in 1988 when it sold for $126,000.00 in 1987 and the full value of the Quinn property in 1988 was $46,390.00 when it sold in 1987 for $77,000. This has the appearance of undervaluation of the older homes. Nothing causes taxpayer resentment and resistance as much as the perception of unfair treatment.
Allegheny permits “general adjustments as a transitional substitute for an individual reappraisal” so long as there “is a seasonable attainment of a rough equality in tax treatment of similarly situated property owners.” But it appears that when the parties themselves (as in the case of a sale) establish a market value as of a certain date which takes into account all factors (including the age of the home) additional depreciation on some other basis (whether it is based on the original construction costs as alleged by Ozier or from imputed replacement cost as urged by the assessor[2]) appears to consider depreciation twice and therefore systematically benefits older homes at the expense of the owners of new homes.
REVERSED and REMANDED for further proceedings consistent with this opinion.
COWART, J., and ORFINGER, M., Senior Judge, concur.

. Ozier claims the homes are comparable because they are frame constructed with stucco walls and, in most cases, of similar size.

. The assessor’s method in reassessing older homes is to impute a replacement value of the home as of the date of the reassessment and then depreciate this figure by 2% a year based on the age of the home. While this method will determine the depreciated value of the home, as the Demster and Quinn assessments indicate it has little relation to the property’s market value. While that method might be acceptable as a market value estimate when there are no intervening sales, it cannot prevail over a true market place assessment.