Dear Ms. Akin:
As attorney for the City of Clearwater, Florida, you have asked for my opinion on substantially the following question:
Does section 316.2045(3), Florida Statutes, as amended by Chapter 2007-43, Laws of Florida, preempt a City of Clearwater ordinance prohibiting the solicitation of donations for charitable, religious, educational, benevolent, or any other purposes?
The City of Clearwater prohibits, by ordinance, anyone from approaching a motor vehicle being operated on a publicly-owned street for the purpose of soliciting or attempting to solicit from the occupant of the motor vehicle donations of money or of property of any kind for charitable, religious, educational, benevolent, or any other purposes. The city does not issue permits or any other exemption from the prohibition.[1] You have asked whether amendments to section316.2045(3), Florida Statutes, that were adopted during the 2007 legislative session, apply to the City of Clearwater which absolutely prohibits solicitation, or whether the statute applies to municipalities and counties where soliciting is currently authorized by permit.
Initially, it is important to note that the regulation of the right to solicit contributions on public roads raises First Amendment considerations. The right to solicit contributions to a charitable or political cause is protected by the First Amendment.[2] In a public forum, such as the streets, time, place, and manner restrictions on the exercise of First Amendment rights will be permitted if they "are justified without reference to the content of the regulated speech, . . . are narrowly tailored to serve a significant governmental interest, and . . . they leave open ample alternative channels for communication of the information."[3]
Section 316.2045, Florida Statutes, has been challenged on First Amendment grounds and found to be unconstitutional. In Bischoff v.Florida,[4] the federal district court adopted the report and recommendation of a United States Magistrate holding section 316.2045, Florida Statutes, facially invalid under the First Amendment. The court said that the statute preferred the viewpoints expressed by registered charities and political campaigners by allowing ubiquitous and free dissemination of their views, but restricted discussion of all other issues and subjects. My review of the legislative history surrounding the most recent amendments to section 316.2045, Florida Statutes, does not indicate that the Legislature recognized the court's holding inBischoff or sought to address the infirmities in the statute. However, this office has no authority to either declare a statute unconstitutional or advise noncompliance with a legislative direction or mandate.[5] Thus, my comments are limited to a consideration of the questions you have asked, i.e., whether amendments to section316.2045(3), Florida Statutes, that were adopted during the 2007 legislative session, apply to the City of Clearwater which currently enforces a policy that absolutely prohibits solicitation on local roadways.
Section 316.2045, Florida Statutes, makes it unlawful for any person to willfully obstruct "the free, convenient, and normal use of any public street, highway, or road" by approaching motor vehicles traveling thereon.[6] Pursuant to subsection (2) of the statute, it is unlawful, without proper authorization or a lawful permit, for any person to obstruct traffic in order to solicit.[7] The state has authorized local governments to issue permits for solicitation activities on local streets, roads, or rights-of-way.[8] The statute recognizes certain exceptions from the provisions of section 316.2045 for solicitation by organizations qualified under section 501(c)(3) of the Internal Revenue Code or registered pursuant to Chapter 496, Florida Statutes.
Section 316.2045(3), Florida Statutes, was amended by Chapter 2007-43, Laws of Florida, to provide:
"Permits for the use of any street, road, or right-of-way not maintained by the state may be issued by the appropriate local government. An organization that is qualified under s. 501(c)(3) of theInternal Revenue Code and registered under chapter 496, or a person ororganization acting on behalf of that organization, is exempt from localrequirements for a permit issued under this subsection for charitablesolicitation activities on or along streets or roads that are notmaintained by the state under the following conditions:
(a) The organization, or the person or organization acting on behalfof the organization, must provide all of the following to the localgovernment:
1. No fewer than 14 calendar days prior to the proposed solicitation,the name and address of the person or organization that will perform thesolicitation and the name and address of the organization that willreceive funds from the solicitation.
 2. For review and comment, a plan for the safety of all personsparticipating in the solicitation, as well as the motoring public, atthe locations where the solicitation will take place.
 3. Specific details of the location or locations of the proposedsolicitation and the hours during which the solicitation activities willoccur.
 4. Proof of commercial general liability insurance against claims forbodily injury and property damage occurring on streets, roads, orrights-of-way or arising from the solicitor's activities or use of thestreets, roads, or rights-of-way by the solicitor or the solicitor'sagents, contractors, or employees. The insurance shall have a limit ofnot less than $1 million per occurrence for the general aggregate. Thecertificate of insurance shall name the local government as anadditional insured and shall be filed with the local government no laterthan 72 hours before the date of the solicitation.
 5. Proof of registration with the Department of Agriculture andConsumer Services pursuant to s. 496.405 or proof that the solicitingorganization is exempt from the registration requirement.
 (b) Organizations or persons meeting the requirements of subparagraphs(a)1.-5. may solicit for a period not to exceed 10 cumulative dayswithin 1 calendar year.
 (c) All solicitation shall occur during daylight hours only.
 (d) Solicitation activities shall not interfere with the safe andefficient movement of traffic and shall not cause danger to theparticipants or the public.
 (e) No person engaging in solicitation activities shall persist aftersolicitation has been denied, act in a demanding or harassing manner,or use any sound or voice-amplifying apparatus or device.
 (f) All persons participating in the solicitation shall be at least 18years of age and shall possess picture identification.
 (g) Signage providing notice of the solicitation shall be posted atleast 500 feet before the site of the solicitation.
 (h) The local government may stop solicitation activities if anyconditions or requirements of this subsection are not met."
Chapter 2007-43, the "Iris Roberts Act" (underlined above) is intended to exempt certain nonprofit organizations from permit requirements related to obstructing streets or roads for solicitation purposes; to establish conditions that certain nonprofit organizations must meet in order to solicit charitable donations on or along certain streets, roads, and rights-of-way; and to authorize local governments to halt solicitation activities if these conditions are not met.[9]
By using the word "may" in the first sentence of the statute, the Legislature has granted local governments the discretionary authority to issue permits for solicitation activities on streets and roads not maintained by the state.[10] The "Iris Roberts Act" then preempts those local governments that have adopted a permit requirement for the solicitation of charitable contributions. Nothing in the act or in the legislative history surrounding adoption of this amendment reflects a legislative intent that local governments having no permit program and currently prohibiting all solicitation must allow solicitation. To read the amended statutory language to allow only charities and political campaigners to solicit could, arguably, subject the statute to federal constitutional challenge as violating First Amendment free speech rights and Fourteenth Amendment equal protection rights.[11] As the court held in the Bischoff case, "[f]acially the Florida statute prefers speech by s. 501(c)(3) charities and those who are engaged in political speech." This problem would continue to be reflected in a city policy prohibiting solicitation except, as required by section 316.2045(3), Florida Statutes, by charitable, religious, educational, or benevolent organizations.
In sum, it is my opinion that section 316.2045(3), Florida Statutes, as amended by Chapter 2007-43, Laws of Florida, does not preempt a City of Clearwater ordinance prohibiting the solicitation of donations for charitable, religious, educational, benevolent or any other purposes on publicly-owned streets. Rather, the statute is addressed to local governments that have adopted a permit system for solicitation activities on non-state maintained roadways. I would strongly suggest that the Florida Legislature revisit this statute to consider the First Amendment problems raised by the Bischoff case.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] This office must presume the validity of duly enacted local legislation. See Ops. Att'y Gen. Fla. 02-79 (2002) and 95-32 (1995);Cf. Pickerill v. Schott, 55 So. 2d 716, 719 (Fla. 1951) (duty of beverage director to observe the law as he found it until in a proper proceeding its constitutionality is judicially passed upon). No comment is expressed herein regarding the validity of the City of Clearwater's ordinance.
[2] See, e.g., Village of Schaumburg v. Citizens for BetterEnvironment, 444 U.S. 620, at 632, 100 S. Ct. 826 at 834,63 L. Ed. 2d 73 (1980), rehearing denied, 445 U.S. 972, 100 S. Ct. 1668,64 L. Ed. 2d 250 (1980), in which the Court stated that:
"Charitable appeals for funds, on the street or door-to-door, involve a variety of speech interests . . . that are within the protection of the First Amendment. Soliciting financial support is undoubtedly subject to reasonable regulation but the latter must be undertaken with due regard for the reality that solicitation is characteristically intertwined with informative and perhaps persuasive speech seeking support for particular causes or for particular views on economic, political, or social issues, and for the reality that without solicitation the flow of such information and advocacy would likely cease."
[3] See Clark v. Community for Creative Non-Violence, 468 U.S. 288,293, 104 S. Ct. 3065, 3069, 82 L. Ed. 2d 221 (1984); Association ofCommunity Organizations for Reform Now v. St. Louis County, 930 F.2d 591
(8th Cir. 1991).
[4] 242 F. Supp. 2d 1226 (M.D. Fla. 2003).
[5] Cf. Ops. Att'y Gen. Fla. 03-32 (2003), 78-64 (1978), and 77-99 (1977); see generally Deltona Corporation v. Bailey, 336 So. 2d 1163
(Fla. 1976).
[6] Section 316.2045(1), Fla. Stat.
[7] Section 316.2045(2), Fla. Stat.
[8] Section 316.2045(3), Fla. Stat., states that "[p]ermits for the use of any street, road, or right-of-way not maintained by the state may be issued by the appropriate local government." Permits for the use of state-maintained roads or rights-of-way are controlled in s. 337.406, Fla. Stat.
[9] See Bill Details, HB 99 — Charitable Public Solicitations, General Bill, "Charitable Public Solicitations."
[10] See City of Miami v. Save Brickell Avenue, Inc., 426 So. 2d 1100
(Fla. 3d DCA 1983) and Fixel v. Clevenger, 285 So. 2d 687 (Fla. 3d DCA 1973) (the word "may" when given its ordinary meaning denotes permissive term rather than mandatory connotation of the word "shall;" Andsee Summary Analysis, HB 99, House of Representatives Staff Analysis, dated January 23, 2007 ("Local governments have the authority to issue permits for solicitation activities on non-state maintained roadways.").
[11] See Bischoff v. Florida, 242 F. Supp. 2d 1226 (M.D. Fla. 2003) (Florida statute prohibiting obstruction of public streets, highways, and roads [s. 316.2045, Fla. Stat.] was content-based and vague, and therefore violated First Amendment free speech rights; statute facially preferred the viewpoints expressed by registered charities and political campaigners by allowing ubiquitous and free dissemination of their views, but restricted discussion of all other issues and subjects).